E. W. KIESAU, Appellant, v. ELLING VANGEN, Appellee.

No. 44619.

APRIL 4, 1939.

Hart & Hart, for appellant.

Arthur H. Jacobson, for appellee.

HAMILTON, J.—Plaintiff's truck came from the north and made a left turn at a sharp blind corner as defendant's Nash car was approaching the corner from the east, traveling on its extreme right side of the graveled or rocked portion of the highway. At or near the east end of this left curve around the corner from the north to the east, the vehicles came together; the left front corner of the stock rack of the truck apparently coming in contact with the front left side of defendant's car. There is a sharp dispute as to the exact distance from the corner the collision occurred, plaintiff contending it was several rods east of the corner; whereas, the defendant's

testimony was to the effect that the collision occurred as the truck was completing the turn too close to the inside. The physical facts indicate the vehicles must have collided just as the truck was completing the turn and straightening out toward the east. This is indicated by the portions of the vehicles that were damaged,—the left front body post and left side, back of the door, of the Nash car being the portion that came in contact with the left front corner of the rack on the truck. To be sure, the impact caused other damages to the car such as breaking the left headlight and bulb and damaging the left front wheel and axle, but the hood and front of the car were not damaged. The damage to the truck was also on its left side; the running board was turned under and the left front corner of the stock rack driven back about six inches; the door to the cab and other parts of the truck were thrown out of alignment; the windshield was broken and the left outside dual tire was blown out, but the contact was back of the left front fender.

O'Neill, witness for plaintiff, who was riding in the truck, was asked:

"Q. Where were you when you first observed the Vangen car? A. Just making the turn on the road, when we had nearly made the turn.

"Q. Then did the accident happen just almost immediately after that? A. Almost instantly."

Kirkeby, witness for the defendant, who was riding with the defendant, stated:

"As we approached the corner, we were on the right hand side of the road. Just as soon as we struck the corner, the Kiesau car (truck) came around the corner, it came catercornered across the corner. Not very much time from when we first saw the truck coming around the corner and the collision."

The disputed question submitted to the jury was: Which one of the drivers failed to yield one half of the highway in passing? The verdict of the jury settles the matter unless the trial court committed some error of law.

I. The first error assigned relates to the examination of the prospective jurors. Counsel for defendant, apparently, had acquired knowledge of the fact that plaintiff was insured in a certain insurance company and the form of some of the

questions propounded to two of the prospective jurors would indicate that counsel was assuming the company was a mutual assessment company and, at first, the trial court apparently was indulging the same assumption. This is revealed by a statement made by the court to counsel, in the absence of the jury, as follows:

"The Court: I understand the (naming the insurance company) is not a mutual company and the mere fact of having a policy would not show any interest in the company. . The objection will be sustained to this question as it now appears this company is not a mutual company, * * *."

Prior to this statement and ruling of the court, two or three of the jurors had been interrogated by defendant's counsel as to whether they were connected in any way with a liability insurance company or any automobile insurance company or if they were members of a certain insurance company (naming it) and the direct question was asked of one prospective juror as to whether he was a policyholder in this certain insurance company and, over objection, the juror answered, "No". When the court was apprised of the fact that the company was not a mutual company, he requested the attorney to desist from asking any of the remaining jurors this question and the record shows that the matter of insurance was never again mentioned throughout the trial of the case.

There is nothing in the record to indicate bad faith or improper motive on the part of counsel for defendant in propounding the questions concerning the jurors' connection with said insurance company and as soon as it appeared, as stated by the court, that the company was a stock company and not a mutual assessment company, there were no further questions along this line. A similar question was asked in the case of Kaufman v. Borg, 214 Iowa 293, 295, 242 N. W. 104, 105. In this case, the question was not answered and a motion was made to discharge the jury and to continue the case. The ruling was reserved and entirely overlooked until after the case was over. In connection with this matter, the court, speaking through Justice Faville, said:

"Assuming, without deciding, that the question of error is properly before us, the action of the trial court did not consti-

tute reversible error. We have recently had occasion to consider this question in Raines v. Wilson, 213 Iowa 1251, 239 N. W. 36. The matter of the latitude that shall be allowed in the examination of jurors upon *voir dire* necessarily and properly rests very largely in the discretion of the trial court. Improper matters should not be inquired into and the examination should in no way be permitted to be utilized for the purpose of attempting to inject prejudicial matter improperly into the minds of the jury. Questions of procedure of this character are especially within the discretion of the trial court and in the case at bar we are satisfied from an examination of the record that no prejudicial error was committed."

To the same effect see Hawkins v. Burton, 225 Iowa 707, 714, 281 N. W. 342, 346; and Montanick v. McMillin, 225 Iowa 442, 449, 280 N. W. 608, 612.

The following quotation from Raines v. Wilson, 213 Iowa 1251, 1262, 239 N. W. 36, 40, is equally applicable to the facts in the instant case:

"There is nothing in the record to show want of good faith on the part of plaintiff's counsel; nothing to show a willful, diligent or persistent course or effort to impress upon the jury the fact that defendant's liability was insured."

As a cautionary statement, we repeat another excerpt from the Raines case, which should be kept in mind, as follows:

"Both counsel and the trial court should, indeed, be very careful, upon this proposition of the examination of jurors, and counsel should propound no questions upon this subject, except for the honest purpose of eliciting proper information to aid them in exercising peremptory challenges. If they proceed further than that, then bad faith on their part will be shown, and if the trial court permits transgression in this respect, then he will be guilty of abuse of discretion."

II. Appellant next complains of the giving of instructions 5, 8 and 6.

Instruction No. 5: "Our law provides that persons in motor vehicles, meeting each other on a public highway, shall give one-half the traveled way thereof by turning to the right."

Instruction No. 8: "You are instructed that by 'traveled

way' is meant the main traveled part of the highway, that is, the graveled portion of the road.''

Instruction No. 6: ''In order for plaintiff to recover from defendant, it is necessary for plaintiff to establish by a preponderance of the evidence before you, each of the following propositions: * * * (2) That the defendant was negligent in that he drove his automobile into plaintiff's truck, when plaintiff's truck was being operated on its right hand side of the road, and that such negligence on the part of the defendant was the proximate cause of the injuries to plaintiff's truck.''

It is the plaintiff's contention that there was a beaten track, which was over on the north half of the east and west road and at the corner, and that the law only required him to yield one half of this beaten path. The graveled portion of the road was 22 to 24 feet wide and, while there was evidence that indicated most of the travel was to the north side, there was also evidence that this gravel was, from time to time, moved back and forth across the road and we think it is a matter of common knowledge that the beaten path of a graveled highway does not remain stationary. The court told the jury in instruction No. 13 that:

''Outside of cities and towns there is no requirement that motor vehicles travel on any certain part of the highway, except that persons in motor vehicles, meeting each other on a public highway, shall give one-half the traveled way thereof by turning to the right.''

And, in submitting the defendant's case, the court said that:

''In order for defendant to recover upon his counterclaim, it is necessary for him to establish, by a preponderance of the evidence before you, each of the following propositions: * * * (2) That the operator of plaintiff's truck was negligent in that, upon meeting defendant's automobile, he failed to give one-half of the traveled way and ran his truck into and against defendant's automobile, and that such negligence on the part of the operator of plaintiff's truck was the proximate cause of the injuries to defendant and to defendant's automobile.''

When these instructions are considered in the light of all other instructions given as applied to the particular facts in this case and the roadway in question, we are satisfied that the

instructions were not unfavorable to the plaintiff and, as applied to the facts in this case, correctly stated the law. There was nothing in the record to indicate that the entire 24 feet of the graveled portion of the highway was not open and fit for travel. It is practically undisputed in the record that the smooth or beaten portion of the gravel road was to the inside or left of the truck; that the defendant's car was within 18 inches or two feet of the edge of the north side of the gravel; and that there was a deep perpendicular ditch on that side of the road. The jury, under all the evidence, could properly have found that this accident was due to the driver of the truck hugging too closely to the corner by staying in the beaten course of the gravel when he should have remained farther to the right in making the turn and that there was little that the defendant could do in the way of pulling farther to the right.

III. Appellant also contends that the verdict of $600 is excessive. While we are satisfied the verdict fully compensated the defendant, we are not able to say that it is excessive. The defendant has some ribs broken and sustained injuries to his chest, forehead, nose, hands, and legs and did not go back to work until eight weeks after the accident. He suffered pain and claims he still experiences pain and at times still has difficulty in breathing. The doctor, who attended him, sutured the gash on his nose and hands, dressed the lacerations of his legs and strapped and bandaged his chest. These bandages remained for about four weeks. The doctor said that, considering Mr. Vangen's age and the injuries he suffered, the injuries he sustained could cause him pain for a considerable period of time; that anyone who has a broken rib suffers excruciating pain. In addition to the personal injuries, the defendant paid out about $90 for repairing his car.

We have given careful attention to all the points in appellant's brief and argument and, after considering the entire record, we are satisfied the jury arrived at a fair and reasonable solution of the controversy between these parties. The case should be and is affirmed.—Affirmed.

MITCHELL, C. J., and OLIVER, BLISS, HALE, MILLER, STIGER, and SAGER, JJ., concur.