In the Matter of the **ESTATE OF Henrietta P. RUTTER,** Deceased.

**Dennis W. Rutter, Appellant,**

v.

**Dwight E. Rutter, Appellee.**

No. 99–0208.

Supreme Court of Iowa.

Sept. 6, 2001.

Rehearing Denied Oct. 3, 2001.

Robert W. Sackett of Sackett & Sackett, P.C., Milford, for appellant.

Michael J. Houchins of Zenor & Houchins Law Office, Spencer, for appellee.

TERNUS, Justice.

This case arises from an unfortunate dispute among the beneficiaries of the estate of Henrietta Rutter. The executor of the estate, Dennis Rutter, appeals the district court's ruling sustaining some of the objections made by a beneficiary, appellee, Dwight Rutter, to the executor's accounting, final report, and proposed distribution. The beneficiary cross-appeals from the court's refusal to impose sanctions on the executor for his handling of these matters.

Upon our de novo review, we affirm the trial court's ruling that the beneficiaries made an oral agreement to forgive debts owed by two of the beneficiaries, Dwight and Douglas Rutter. We reverse the trial court's finding that this family agreement did not include an understanding that the beneficiaries would forego any challenge to the claim of the executor that the decedent had gifted two pieces of farm equipment to him prior to her death. In addition, we also affirm the trial court's denial of ex-

traordinary fees to the executor and his attorney. On the cross-appeal, we reverse the trial court's refusal to remove the executor as a sanction for his handling of the estate. We remand for appointment of a new executor and attorney and for the preparation of an amended accounting, final report, and proposed distribution in accordance with this court's decision on appeal.

I. *Background Facts and Proceedings.*

The decedent, Henrietta Rutter, died testate on September 2, 1995. Four children survived her: Douglas Rutter, Dwight Rutter, Dennis Rutter, and Jane Ann Stout. Henrietta's husband and the children's father, Dean Rutter, had predeceased Henrietta in 1982. In order to understand the objections made to the final report and distribution of assets in Henrietta's estate, some history of Dean's estate is helpful.

Dean was a farmer, as are Dean and Henrietta's three sons. When Dean died, he bequeathed specific parcels of farmland to his sons, with each son receiving approximately one half section. Henrietta inherited Dean's fifty-percent interest in Rutter's, Inc., a family farm corporation that also owned farmland. Henrietta, by virtue of her ownership of the other fifty percent of Rutter's, became the sole owner of the corporation.

The Rutter brothers decided to defer payment of the federal estate tax owed on the land they inherited. *See* I.R.C. § 6166 (West 1984). Under this election, the tax was to be paid over a fifteen-year period at four percent interest, with only interest payments in the first four years. In the initial years, each brother paid one-third of the estate tax installment. From 1988–1990, however, Dwight was unable to pay his share. During this period, Douglas and Dennis each paid one-half of the taxes

when they came due. In 1991, Dwight was financially able to resume payment of his share of the yearly estate tax obligation. From that time until his mother died, Dwight paid one-third of the annual tax installment.

On April 4, 1989, Henrietta signed a new will. In this will, she provided that after payment of administration expenses and some specific bequests, all assets and funds remaining in her estate were to be placed in a trust. The trustee was directed to pay one fourth of the annual income of the trust to Jane Ann, and use the remaining income to satisfy the deferred estate tax liability on Dean's estate. Any remaining trust income was to be distributed "for the use and benefit of [her] three sons" as provided in her will. The trust was to terminate "after November 1997," and upon termination of the trust, the remaining trust assets were to be distributed equally to her four children. Henrietta nominated her son, Dennis, to serve as executor and trustee.

Henrietta's will also disposed of Henrietta's shares of Rutter's, Inc. Jane Ann was to be paid a sum equal to twenty-five percent of the value of Henrietta's shares within eighteen months of Henrietta's death. After this payment, the three brothers were to become the sole shareholders of Rutter's.

On March 3, 1992, Henrietta drew a codicil to her will to clarify her intent with respect to distribution of the trust funds. Referring to the fact that not all of her sons had been able to fully meet their obligation to contribute toward the tax liability assumed by them with respect to Dean's estate, she stated that it was her "intention that those who did pay those tax bills will be fully reimbursed, with interest,

before any other distribution would be made to or on behalf of ... [the] children" not making their required payment.

As previously noted, Henrietta died on September 2, 1995. Dennis was appointed executor of the estate and Robert Sackett was appointed the attorney for the executor. On October 7, 1995, a family meeting was held in Sackett's office to read the will and to discuss the estate. What was said at this meeting is greatly disputed, but the brothers concur that a family agreement to settle various matters was discussed.

The executor maintained several accounts during his administration of Henrietta's estate, including separate accounts for the estate and for the trust. During the course of the administration of the estate, Jane Ann was paid one-fourth of the value of Rutter's as required by Henrietta's will. This payment was made from the trust account.

On July 1, 1997, Dennis filed a final report, proposed distribution, and application for discharge in the district court. The report stated that Jane Ann had received her one-fourth share of Rutter's, Inc. and that Dennis, Dwight, and Douglas would become owners of all shares of the corporation. The report included an accounting of the trust account, showing an ending balance of approximately $120,000, and an accounting for the estate account, which showed an ending balance of just under $17,000. The proposed distribution was calculated by adding the balances of these accounts together, subtracting attorney fees and probate expenses, and then dividing by four, to arrive at an initial proposed distribution to each child of $29,450.[1]

---

1. It appears that the three brothers agreed to use the trust corpus to pay the outstanding estate tax balance on Dean's estate and then distribute the remaining funds prior to the trust termination date specified in Henrietta's will.

It was undisputed that Dwight had never repaid his brothers for covering his share of the federal estate tax obligation in Dean's estate from 1988 to 1990. Dennis, as the executor of Henrietta's estate, determined that under the terms of the codicil, Dwight was required to pay this sum back with interest before he could receive a distribution from the trust fund. Using an interest rate of six percent, Dennis calculated that Dwight owed his brothers $21,823. This amount was deducted from Dwight's share, leaving him with a final distribution of $7,627. One-half of Dwight's debt was then added to Dennis's and Douglas's shares, leaving them each with a final distribution of $40,362.·

Upon receipt of the final report and proposed distribution, Dennis and Douglas waived notice of hearing. Jane Ann filed no response, and Dwight filed objections. After much wrangling over discovery issues, a hearing on the final report and accounting and on the objections to that report and accounting was held. All three brothers testified at the hearing, and Jane Ann, over Dennis's objection, testified by phone. The substance of their testimony will be discussed in detail later in this opinion.

Dwight contended at the hearing that his proportionate share of the federal estate tax obligation on Dean's estate was less than one-third due to differences in the value of the real estate received by each son from Dean's estate. Second, Dwight asserted that some farm equipment owned by Henrietta had been improperly considered gifts to Dennis and that these items should have been included as assets of the estate. Third, Dwight claimed that it was agreed at the family meeting in Sackett's office that Douglas's $24,000 debt to his mother would be forgiven in exchange for forgiveness of Dwight's debt with respect to the federal estate tax obligation on Dean's estate. Dwight also contended that the estate accounting was improper, requiring that the distribution be amended. Finally, Dwight argued that because of the inaccuracies in the accounting and the proposed distribution, Dennis should be removed as the executor of the estate and a new executor should make a new accounting of the estate.

In a motion for sanctions filed after the hearing, Dwight renewed his request that Dennis be removed as the executor. In the alternative, he requested that the executor and his attorney be denied any fees.

The district court subsequently entered a ruling on the objections to the final report and Dwight's motion for sanctions. The court found that all parties in interest had agreed to forego collection of the past due installments of federal estate tax owed by Dwight. The court also held that even if no agreement had been reached with respect to Dwight's estate tax obligation, the codicil was unenforceable because "[t]he collection of the federal estate tax payments made by Douglas Rutter and Dennis Rutter is actually a matter outside the administration of this estate." With respect to the $24,000 loan, the court found that Douglas owed this sum to Henrietta at the time of her death and that the children had agreed at the family meeting that this debt would also be forgiven. Regarding the alleged gifts of equipment to Dennis by Henrietta, the court ruled that Dennis had failed to prove that a gift had occurred. Therefore, the court stated, these items should have been included in the estate.

The court ruled that the accounting was "incomplete and lack[ed] appropriate detail." The court also noted that the accounting was incorrect in that it failed to adjust the distribution to Jane Ann based on the fact that her interest in Rutter's

was paid using trust funds, one-fourth of which belonged to Jane Ann. Another problem identified by the district court was the fact that the estate had paid the Iowa inheritance tax, which was not a liability of the estate. Moreover, the accounting did not reflect each heir's liability for this tax.

The court approved ordinary fees for the executor and attorney, rejecting Dwight's objections to the fees and rejecting the executor's and attorney's requests for extraordinary fees. The court did not remove the executor, as Dwight had requested, but did order the executor to file an amended report, accounting and proposed distribution in accordance with the court's ruling.

In a later order, the court overruled a rule 179(b) motion filed by Dennis, rejecting his argument that if there was any agreement among the siblings, it included the disputed farm machinery. *See* Iowa R. Civ. P. 179(b).

The executor has appealed, raising several issues: (1) the court abused its discretion in admitting the telephonic testimony of Jane Ann; (2) the court erred in finding a family agreement to disregard the terms of Henrietta's codicil with respect to Dwight's liability for the deferred taxes paid by his brothers; (3) the court erred in finding that Douglas had not repaid the $24,000 debt to his mother; (4) the court erred in determining that Henrietta had not gifted two pieces of machinery to Dennis; (5) the court erred in finding that the terms of the codicil were not enforceable; and (6) the court abused its discretion in denying extraordinary fees. Dwight has cross-appealed, claiming that the executor should be removed. In addition, Dwight argues that in the event the appellate court finds no family agreement existed and the codicil is enforceable, he should be liable only for his proportionate share of the federal estate tax liability in his father's estate as determined by the relative value of the land inherited by the brothers.

## II. *Did the Trial Court Err in Allowing Jane Ann to Testify by Telephone?*

At the hearing, Dwight sought to have Jane Ann testify by telephone. The executor objected, claiming that the witness should testify in person to enable the court to judge the demeanor of the witness. Notwithstanding this objection, the court permitted Jane Ann to be questioned over the telephone.

 We review this evidentiary ruling for an abuse of discretion. *See Dettmann v. Kruckenberg*, 613 N.W.2d 238, 249 (Iowa 2000); *Schlader v. Interstate Power Co.*, 591 N.W.2d 10, 11 (Iowa 1999). An abuse of discretion occurs when the trial court exercises its discretion "on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Maghee*, 573 N.W.2d 1, 5 (Iowa 1997). "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *Graber v. City of Ankeny*, 616 N.W.2d 633, 638 (Iowa 2000).

 In determining the allowable forms of evidence, we must first classify the action being tried. Civil actions are either ordinary (at law) or equitable. *See* Iowa Code § 611.3 (1997); *Smith v. ADM Feed Corp.*, 456 N.W.2d 378, 387 (Iowa 1990) (Carter, J., dissenting). The present action is an equitable proceeding. *See In re Estate of Todd*, 585 N.W.2d 273, 275 (Iowa 1998) (holding that all matters triable in probate other than actions to set aside a will are tried by the probate court as a proceeding in equity (citing Iowa Code § 633.33 (1995))).

In actions at law, the case must be tried "upon oral evidence *taken in open court.*" Iowa Code § 624.1 (emphasis added); *see In re Gust,* 345 N.W.2d 42, 44 (N.D.1984) (interpreting requirement that "testimony of witnesses shall be taken orally in open court" to mean "that a witness testifying in a case must be present in court so that the trier of fact may observe the demeanor of the witness"). This requirement is relaxed in equitable actions where the court may allow a witness to testify by deposition. *See* Iowa Code § 624.3. The legislature has also authorized telephone testimony in specified situations. *See, e.g., id.* §§ 237.20(1)(*d*) (allowing testimony by "a tape recorded telephone call" in proceedings before local citizen foster care review boards), 252K.316(6) (providing for "[s]pecial rules of evidence and procedure" in proceedings under Uniform Interstate Family Support Act, including the allowance of witness testimony "by telephone"), 598B.111 (2001) (allowing "an individual residing in another state to be deposed or to testify by telephone, audiovisual means, or other electronic means" in child custody proceeding subject to Uniform Child Custody Jurisdiction and Enforcement Act). There is no rule or statutory provision, however, that would allow witnesses to testify telephonically in equitable proceedings in general. *See In re Bieganowski,* 520 N.W.2d 525, 528 (Minn.Ct.App.1994) (holding that rule allowing evidence to be submitted by deposition did not authorize submission of telephone testimony).

Given this statutory framework, the trial court had no authority to permit Jane Ann to testify by telephone over the objection of the executor.[2] Therefore, the

court's ruling permitting such testimony was based on an erroneous application of the law and constituted an abuse of discretion. *See id.* (holding that trial court abused its discretion in allowing witness to testify by telephone in absence of rule or statute permitting such testimony as a "substitute for oral testimony in open court"). Having held that Jane Ann's testimony should not have been allowed, we will address the remaining issues in this case without consideration of her testimony, with one minor exception noted later.

### III. *Was There a Family Agreement and, if So, What Were Its Terms?*

The trial court found there was an oral agreement by the four siblings to disregard the codicil and relieve Dwight of his obligation to repay his brothers for the federal estate tax payments Dennis and Douglas had made on Dwight's behalf. The court also found that pursuant to this oral agreement, the beneficiaries agreed not to seek payment of a $24,000 note owed to Henrietta by Douglas. On appeal, Dennis claims there was not a meeting of the minds with respect to such an agreement, but if there was it included an understanding that the beneficiaries would abandon any claim that Henrietta had not gifted the disputed machinery to Dennis.

Our review of the trial court's ruling is de novo. *See In re Estate of Spurgeon,* 572 N.W.2d 595, 597 (Iowa 1998) (holding that claims tried in equity are reviewed de novo). In a de novo review, we make our own fact findings, but we give weight to the trial court's findings with respect to the credibility of witnesses.

---

**2.** We are not aware of any statute or rule that would prohibit the parties, *by mutual agreement,* from submitting a witness's testimony by telephone, provided the court has no objection to such a procedure. *See In re Gust,* 345

N.W.2d at 44 (noting that despite requirement that witness be present in court to testify, such testimony may be presented otherwise "by agreement of the parties, with approval of the court").

*See In re Estate of Kiel,* 357 N.W.2d 628, 630 (Iowa 1984).

Dennis and Douglas testified at trial that the subject of Douglas's note and Dwight's obligation for deferred estate taxes in their father's estate was discussed at the family meeting in the lawyer's office, but there was no agreement that these debts would be forgiven. They also testified that Douglas had paid the note prior to Henrietta's death. In contrast, Dwight testified that an agreement to forego collection of Dwight's and Douglas's debts was reached at that meeting. Dwight recalled that Sackett brought up the fact that Douglas had a note with Henrietta for $24,000. Dwight testified that Sackett suggested that everyone agree to forgive Dwight's unpaid tax obligations and Douglas's note. It was Dwight's understanding when he left that meeting that everyone had agreed to this suggestion and that these matters "would just be forgot." Before we consider whether a family agreement was reached at the meeting in the attorney's office, we address Dennis's claim that Douglas had paid the promissory note prior to Henrietta's death.

Although Douglas testified that he had repaid the $24,000 prior to his mother's death, no documentation of any such payment was produced and none was found in Henrietta's accounts. Dennis did introduce documents showing that a piece of property owned by Douglas had been deeded to his mother and then subsequently deeded' back to Douglas. Dennis claimed that this property was security for Douglas's debt to Henrietta and the fact that Henrietta deeded it back to Douglas showed that the note had been paid. Douglas's testimony, however, did not support this scenario. Douglas acknowledged that at the time of the original deed from him to his mother, he was involved in

bankruptcy proceedings and he "really didn't want [the land] in [his] name at that time." In fact, Douglas admitted that on the same day he transferred the property to his mother, she sold it on contract to Douglas's children. He also admitted that after he "got [his] affairs together," his children assigned the contract to him and then his mother deeded the property back to him.

In addition, Dennis testified that the promissory note was found in his mother's safety deposit box after she died and was listed on an inventory of the contents of the safety deposit box. No one testified that the note was cancelled or marked "paid." By the time of trial, the note had disappeared and Dennis testified he did not know what had happened to it.

We draw two inferences from this evidence. First, the fact that the promissory note was in Henrietta's possession at the time of her death raises a rebuttable presumption that the note was not paid. *See Burch Mfg. Co. v. McKee,* 231 Iowa 730, 732, 2 N.W.2d 98, 99 (1942). Second, Dennis's failure to produce the note at trial despite his possession of it as executor of Henrietta's estate also raises an adverse inference. *See Phillips v. Covenant Clinic,* 625 N.W.2d 714, 718 (Iowa 2001). As we said in *Phillips,* "[i]t is a well-established legal principle that ... the failure to produce documents or physical evidence relevant to the proof of an issue in a legal proceeding supports an inference that the evidence would have been unfavorable to the party responsible for its ... nonproduction." *Id.* We find, as did the trial court, that Douglas had not repaid the $24,000 loan from his mother.

We now turn to the primary issue—was there an agreement by the siblings to forgive Douglas's debt to his mother and Dwight's debt to his brothers? In addition to Dwight's testimony that such

an agreement was made, Dennis's conduct as executor prior to his filing of the final report supports the existence of a family agreement. When the required forms were filed with the Iowa Department of Revenue and Finance with respect to Iowa inheritance and estate taxes, the executor showed the respective shares of the four siblings in amounts that did *not* reflect Henrietta's directions in the codicil to her will to deduct unpaid deferred estate taxes from the share of any beneficiary who had not paid his portion of those taxes. In fact, the "computation of shares and tax" for Douglas and Dwight were identical, showing that each was entitled to a net share of approximately $60,000. Dennis could not explain at trial why the computation of shares in the inheritance tax forms varied from the proposed distribution filed with the final report.

We agree with the district court that the most credible testimony supports the existence of a family agreement to forgive Douglas's unpaid obligation under the promissory note and Dwight's obligation for past, deferred estate taxes.[3] We turn, then, to Dennis's claim that if such an agreement existed, it included an understanding that no one would challenge his ownership of the farm equipment he alleges his mother gave him.

Douglas and Dennis both testified that their mother had given this equipment to Dennis early in 1995. Although these transfers were within three years of Henrietta's death and therefore includable in her estate for tax purposes, *see* Iowa Code

§ 450.3(2); I.R.C. § 2503 (1994), they were not listed in the estate's Iowa inheritance and estate tax return, as required under Iowa law. *See* Iowa Code § 450.53. Similarly, Douglas's debt to the estate, which was an asset of the estate notwithstanding any agreement that Douglas did not have to pay the note, was not listed as an estate asset. These actions by the executor are consistent with a family agreement that the various transactions concerning each brother would simply "be forgot[ten]." In addition, common sense and the less-than-warm relationship among the brothers suggest that any family agreement would include some benefit to each brother. If Dennis's gifted equipment is included in the family agreement, all brothers benefited in a roughly equivalent amount. Dwight's obligation of almost $22,000 was forgiven, Douglas's debt of $24,000 was forgiven, and Dennis received equipment without objection valued at $25,500. Based upon our de novo review of the record, we find that the family agreement included an understanding that Dennis could have the disputed equipment free of any challenge by his siblings. We reverse the district court's contrary finding.

In summary, we find that a family agreement was made that Douglas's unpaid note to his mother and Dwight's debt to his brothers would be forgiven, and that the beneficiaries would not contest Dennis's ownership of the farm machinery. Accordingly, the brothers' distributive shares of the estate should not have been adjusted for the debt Dwight owed to

---

**3.** Dennis argues that an adverse inference should be drawn from the fact that Dwight's wife, Beverly, who was present at the family meeting, did not testify at trial. The decision not to call Beverly as a witness may have been due to the fact that the court had received the testimony of Jane Ann into evidence. Jane Ann was the only disinterested witness and her testimony fully supported

Dwight's version of the meeting. Dwight's attorney may have viewed the testimony of Beverly, an interested witness by virtue of her marriage to Dwight, as unnecessary in view of Jane Ann's favorable testimony. Therefore, we hesitate to draw an adverse inference from Beverly's failure to testify given the state of the record at the time that decision was made.

Douglas and Dennis. Although the executor acted properly in not requiring Douglas to pay the $24,000 note, this note was an asset of the estate and it should have been included in the estate for purposes of computing any taxes owed. Likewise, notwithstanding the family agreement to "forget" the gifts to Dennis, these items should also have been revealed in the tax returns as transfers made within three years of the decedent's death. Contrary to the executor's argument in his brief, inclusion of these items in the estate *for tax purposes* does not violate the family agreement. The family agreement only affects the rights and obligations of the beneficiaries as to the estate and each other; the agreement cannot alter the legal requirements with respect to the taxation of estate assets.

Our finding that a family agreement existed renders any question about the enforceability of the codicil moot. Pursuant to the family agreement, Dwight's obligation for deferred estate taxes was forgiven. Therefore, as we have stated, there was no need to adjust Dwight's distribution as required by the codicil. Consequently, we do not decide whether the codicil was enforceable. For the same reason, we need not determine whether Dwight's share of the deferred taxes should have been computed on a proportionate basis rather than a pro rata basis. Finally, our finding that the family agreement included the abandonment of any challenge to Dennis's ownership of the disputed equipment makes it unnecessary for the court to decide whether Henrietta had, in fact, given this property to Dennis prior to her death.

IV. *Compensation and Retention of the Executor.*

The only remaining issue on the executor's appeal is his claim that he and his attorney are entitled to extraordinary fees. We think it makes sense to consider this claim with the contentions made in Dwight's cross-appeal that the executor should be removed or, alternatively, should be denied any fee. We begin with the question of whether Dennis should be removed as executor.

At the hearing on the objections and in a subsequently filed motion for sanctions, Dwight requested that the court sanction Dennis by removing him from his position as executor or, alternatively, by denying any fees. In the court's ruling on Dwight's objections, the court denied any sanctions.

■ A district court is "allowed to exercise a large discretion" in determining whether to remove an executor. *In re Estate of Lininger,* 230 Iowa 201, 205, 297 N.W. 310, 312 (1941); *accord In re Estate of Lovell,* 344 N.W.2d 576, 579 (Iowa Ct. App.1983). Accordingly, we will not interfere with the exercise of this discretion unless it has been abused. *See In re Estate of Lininger,* 230 Iowa at 205, 297 N.W. at 312.

■ A fiduciary may be removed if he or she "has mismanaged the estate [or] failed to perform any duty imposed by law." Iowa Code § 633.65. The burden to prove conduct sufficient for removal of the executor is upon the person seeking removal. *See In re Estate of Atwood,* 577 N.W.2d 60, 63 (Iowa Ct.App.1998).

■ Here, Dwight claims that Dennis should be removed because he has failed in his statutory duty to render a fair and accurate accounting of the property of the estate. Iowa law requires an executor to set forth in his final report "[a]n accounting of all property coming in the hands of the personal representative and a detailed accounting of all cash receipts and disbursements." Iowa Code § 633.477(9).

It should go without saying that this accounting must be true and accurate. Moreover, the executor is a fiduciary. *See id.* § 633.3(17). As such, the executor has an obligation to treat the beneficiaries of a trust or estate impartially. *See Restatement (Third) of Trusts* § 183, at 149 (1992). Similarly, a fiduciary "cannot use [his] position, directly or indirectly, for [his] own advantage or profit." *Coster v. Crookham,* 468 N.W.2d 802, 806 (Iowa 1991).

With respect to the accounting rendered by the executor, the district court made the following findings, which were not challenged by the executor on appeal:

> The accounting made as a part of the Final Report is *incomplete* and lacks appropriate detail. Many of the receipts and disbursements are not adequately identified. Disbursements are made from the trust account, *which appear to be unauthorized.* These disbursements from the trust account could, however, be of little significance, if the intent is to close the trust forthwith, but, as mentioned earlier, the proposed accounting is *incorrect,* as to the share of Jane Ann Stout.

> The Iowa inheritance taxes were paid out of the estate. The Final Report and Accounting does not reflect each heirs [sic] liability for Iowa inheritance tax. Iowa inheritance tax is not an estate expense. Each share must be computed separately, and if paid out of the estate account, appropriate adjustments must be made to reflect the individual tax liability.

(Emphasis added.) Coloring this conduct is the fact that the executor's payment of Jane Ann's share of the family corporation out of the trust account and his subsequent failure to adjust the distribution of the trust funds accordingly benefited the executor personally, and, coincidentally, his brothers. Because one-fourth of the trust funds used to pay Jane Ann were funds to which she was already entitled, the executor's use of these funds had the effect of increasing his and his brothers' distributions from the trust fund. A similar result occurred with respect to the executor's handling of the Iowa inheritance tax. Because Dennis inherited more property than did his siblings, he owed more than twice as much inheritance tax than they owed.[4] By using estate funds to pay these taxes and not adjusting the beneficiaries' distributive shares accordingly, Dennis benefited at the expense of the other heirs. Finally, in determining the distribution to be made to each beneficiary, Dennis clearly favored himself and his family ally, Douglas, by not accounting for the gifted property or the $24,000 note, yet making adjustments for Dwight's debt.

At the hearing, Dennis explained his actions by asserting that he simply signed what his attorney had prepared. Even if this explanation is true, the attorney was chosen by Dennis, *see* Iowa Code § 633.82, and Dennis signed the various forms and filings stating that he had read them and that they were true and correct. He cannot now disclaim responsibility for his actions. *See generally id.* § 633.85 (discussing personal liability of fiduciary for acts or omission of agent).

 We think the trial court abused its discretion in failing to remove the executor. The executor, in breach of his duty of impartiality, clearly handled the estate in a manner that favored some beneficiaries over others. In addition, as the trial court

---

4. There were some specific bequests made to Dennis that had the effect of increasing his share of the estate over that of the other beneficiaries and pushing him into a higher tax bracket for inheritance tax purposes.

found, the accounting was incomplete and showed unauthorized disbursements from both the trust account (payment of Jane Ann's share of Rutter's) and the estate account (payment of the beneficiaries' inheritance taxes). It is also significant that these disbursements were to Dennis's personal advantage. *See In re Estate of Atwood,* 577 N.W.2d at 63 ("evidence the executor is using his or her position as a personal advantage may also serve as grounds for an executor's removal"). In view of this conduct, the executor should not have been allowed to continue to administer this estate. *See In re Estate of Jones,* 492 N.W.2d 723, 726–27 (Iowa Ct. App.1992) (reversing trial court's refusal to remove executor where executor had used her position as conservator and executor to benefit her son who had divergent interests from the other beneficiaries); *cf. In re Estate of Amick,* 225 Iowa 829, 832, 281 N.W. 786, 788 (1938) (holding that *inadvertent* failure to include certain assets in the estate did not necessarily require removal of executors). Therefore, we reverse the trial court's ruling denying Dwight's request to remove the executor. This decision necessarily results in the removal of the attorney chosen by the executor as well.

Our conclusion that the executor should be removed moots Dwight's alternative request that the executor should be denied any fee. That leaves only the claim for extraordinary fees. The probate court has "considerable discretion" in allowing attorneys' fees. *See In re Estate of Bass v. Bass,* 196 N.W.2d 433, 435 (Iowa 1972). For the same reasons justifying Dennis's removal as executor, we find no abuse of discretion in the trial court's denial of Dennis's request for extraordinary fees incurred by the executor and his attorney in defending against Dwight's objections. *Cf. In re Estate of Pence,* 511 N.W.2d 651, 652 (Iowa Ct.App.1993) (disallowing fees for attorney and special administrator incurred in litigating matters of personal interest between the heirs); *In re Estate of Bolton,* 403 N.W.2d 40, 47 (Iowa Ct.App. 1987) (holding attorney not entitled to extraordinary fees for advocating the position of one executor/beneficiary against that of another beneficiary/executor). Therefore, we affirm the trial court's fee award to the executor and attorney.

## V. *Conclusion and Disposition.*

We reverse the trial court's decision to allow Jane Ann to testify by telephone. Nonetheless, we affirm the trial court's finding that a family agreement existed to forgive Dwight's debt to his brothers and Douglas's debt to his mother. We reverse the court's finding that the agreement did not include an understanding that the beneficiaries would not contest Dennis's entitlement to the disputed pieces of farm equipment.

We hold that the district court abused its discretion in failing to remove the executor after finding that the executor had made unauthorized disbursements from the trust account and the estate account to his personal advantage. We affirm the district court's award of fees and deny the executor's request for extraordinary fees.

The case is remanded to the district court for the appointment of a new executor and a new attorney. The new executor shall file an amended inventory, accounting, final report, and proposed distribution. These filings shall be in accordance with this opinion and those portions of the district court ruling not challenged on appeal. By specifying that certain filings shall be amended, we do not mean to restrict the authority of the executor to exercise any other powers an executor has by law.

**AFFIRMED IN PART AND REVERSED IN PART ON APPEAL; RE-**

VERSED ON CROSS–APPEAL; CASE REMANDED.

All justices concur except STREIT, J., who takes no part.