**IN THE COURT OF APPEALS OF IOWA**

No. 13-0747
Filed April 30, 2014

IN THE MATTER OF THE ESTATE OF
JAMES LOUIS KEMP SR., Deceased.

CARLA K. POLL, KAREN A. FRIEND,
JAMES L. KEMP, DAVID C. KEMP,
BRUCE W. KEMP and CRAIG C. KEMP,
        Intervenors-Appellants,

vs.

PAMELA S. KEMP, Executor of
the Estate of James Louis Kemp,
Sr., Deceased,
        Appellee.
_____

        Appeal from the Iowa District Court for Jackson County, Gary D.

McKenrick, Judge.


        Objectors/Intervenors appeal an order approving the sale of estate

property and denying their petition for removal of the estate executrix.

**REVERSED AND REMANDED.**


        D. Flint Drake of Drake Law Firm, P.C., Dubuque, for appellants.

        Steven Jon Kahler, Maquoketa, for appellee.


        Considered by Vogel, P.J., and Tabor and McDonald, JJ.

**MCDONALD, J.**

Several siblings appeal an order that approved the sale of farmland from their father's estate and that denied their petition to remove the executrix of the estate. For the reasons set forth below, we reverse the order of the district court and remand for further proceedings.

I.

James Louis Kemp Sr. died testate on December 11, 2012, leaving ten surviving children as the beneficiaries of his estate. A petition for probate of will and appointment of executrix was filed by his daughter, Pamela S. Kemp, on January 18, 2013. On that same date the court entered an order admitting the will to probate and appointing Pamela as executrix.

The assets of the estate included farm machinery, motor vehicles, a small number of cattle, a bank account, and a 112-acre farm in Jackson County, Iowa, comprised of cropland, pasture ground, hay ground, timberland, and a house and building site. On February 5, 2013, Pamela was approached by Jeff Holdgrafer, a neighbor of the decedent, who had rented the decedent's crop ground for the past five years. Holdgrafer offered to purchase all the land, buildings, cattle, and farm machinery held by the estate for $481,600. At this point, Pamela had made no attempt to determine whether any other local farmers or other persons had an interest in the property. She had made no effort to determine the value of the estate's assets. Pamela did not have a background in valuation. Despite not knowing whether any other persons had interest in the property or the fair market value of anything Holdgrafer wanted to buy, Pamela agreed to the offer after she

"sat down and thought about it and did figuring in [her] head and figured it was a pretty good deal."

That same day, Jeff's brother Dale drafted a handwritten purchase agreement that Pamela and Jeff both signed and dated. Later that same day, Pamela, along with her brother Larry Kemp, another beneficiary of the estate, entered into a separate repurchase agreement with Holdgrafer to buy back five acres of the property, including the house and out-buildings, and all the machinery and cattle for $10,000.

The following day, February 6, Holdgrafer's lawyer, Melissa Mommsen, formalized the handwritten purchase agreement for the sale of the estate property and had all relevant parties, including Holdgrafer's wife, sign and date it. The newly-drafted purchase agreement for the sale of the estate property to Holdgrafer stated: "This offer is contingent upon the sale of the house and outbuildings to Pam and Larry Kemp, evidenced by a purchase agreement, which shall be signed by all pertinent parties prior to the closing of this transaction."

On March 5, 2013, Mommsen redrafted the purchase agreement for the sale of the estate property to Holdgrafer. This redrafted purchase agreement substituted the "contingent sale" language from the February 6 agreement, replacing it with a paragraph stating: "Buyers agree that Pamela Kemp and Larry Kemp shall have the first option to purchase the five-acre building site . . . following the Closing of this transaction." All relevant parties signed and dated the revised agreement on March 5. On the same date, Mommsen formalized the

repurchase agreement for the sale of the five acres from the Holdgrafers to Pamela and Larry. The redrafted repurchase agreement differed from the initial agreement in that the redrafted repurchase agreement did not include the machinery and cattle in the sale. The parties signed and dated this contract on March 5.

On March 15, 2013, Pamela filed her petition to sell property, seeking court approval of the sale of 112 acres of farmland, cattle, and machinery to Holdgrafer. Attached to the petition was the real estate agreement between Pamela, as executrix of the estate, and the Holdgrafers. The disclosed purchase agreement contained the language providing Pamela and Larry an option to purchase the five-acre building site. The petition and disclosed purchase agreement did not disclose that Pamela and Larry already had entered into an agreement to repurchase the five-acre building site for $10,000.

Although the repurchase agreement was not disclosed, Pamela and Larry's siblings learned of it. Six of Pamela and Larry's siblings and co-beneficiaries, the appellants herein, filed an objection to the sale of the property and a petition to remove Pamela as executrix of the estate. The appellants contended the sale was not the highest price obtainable and was not in the best interest of the estate. The appellants further contended that Pamela engaged in improper self-dealing by agreeing to a sale price lower than fair market value to facilitate the repurchase agreement for her and Larry.

The matter came on for hearing on April 9, 2013. The district court approved the proposed sale and denied the petition to remove Pamela as the

executrix. The district court found the purchase price was below the appraised value, but the district court concluded the sale was reasonable. The district court reasoned the net proceeds to the estate as a result of the sale were close to fair market value because Pamela avoided paying sales commission by selling the property without an agent. Further, the district court reasoned, Pamela was able to obtain payment more quickly by not having to market the property. Because of the time value of money, the district court reasoned, "this is a case where the adage that a bird in hand is worth two in the bush is pertinent." Appellants timely appealed the district court's order.

II.

Probate matters involving the sale of property are reviewed de novo. *See* Iowa Code § 633.33 (2013); *see also Thornton v. Estate of Thornton*, 531 N.W.2d 651, 653 (Iowa Ct. App. 1995) ("This probate matter was a proceeding in equity. . . . As a result, review is de novo."); *In re Estate of Waterman*, No. 10-0960, 2011 WL 768753, at *3 (Iowa Ct. App. Mar. 7, 2011) ("We review probate matters involving the sale of property de novo."). We review the district court's decision regarding the removal of an executrix for an abuse of discretion. *See In re Estate of Rutter*, 633 N.W.2d 740, 749 (Iowa 2001) ("A district court is 'allowed to exercise a large discretion' in determining whether to remove an executor.") (quoting *In re Estate of Lininger*, 297 N.W. 310, 312 (Iowa 1941)). "We examine the record de novo to determine whether an abuse of discretion can be found." *In re Estate of Randeris v. Randeris*, 523 N.W.2d 600, 606 (Iowa Ct. App. 1994); *accord Rutter*, 633 N.W.2d at 749.

III.

A.

We first address the issue of whether the district court abused its discretion in denying appellants' petition to remove Pamela as executrix. An executrix is a fiduciary of the estate being administered. *See* Iowa Code § 633.3(16) (defining executor) and (17) (defining fiduciary); *In re Estate of Phoenix*, 493 N.W.2d 79, 81 (Iowa Ct. App. 1992) ("A duly-appointed executor is a fiduciary and is frequently referred to as a trustee for all interested parties."). A fiduciary may be removed if he or she has "mismanaged the estate [or] failed to perform any duty imposed by law . . . ." Iowa Code § 633.65. "A conflict of interest or evidence that the fiduciary is using his or her position for personal advantage may also serve as grounds of removal." *In re Estate of Zenisek*, No. 08-0938, 2009 WL 1211981, at *2 (Iowa Ct. App. May 6, 2009); *see* Iowa Code § 633.155 (providing "[n]o fiduciary shall in any manner engage in self-dealing, except on order of court after notice to all interested persons, and shall derive no profit other than the fiduciary's distributive share in the estate from the sale or liquidation of any property belonging to the estate"); *In re Estate of Jones*, 492 N.W.2d 723, 726 (Iowa Ct. App. 1992) ("A trustee cannot use its position, directly or indirectly, for its own advantage or profit."); *In re Estate of Snapp*, 502 N.W.2d 29, 33 (Iowa Ct. App. 1993) ("Self-dealing involves those situations in which a fiduciary personally profits from transactions between himself and the estate . . . ."). We conclude Pamela materially mismanaged the estate and

engaged in self-dealing. We hold it was an abuse of discretion not to remove her as executrix of the estate.

One of the primary duties in administering an estate is to maximize the value of the estate for the benefit of the beneficiaries. *See Mercantile Bank Co., N.A. v. Yeggy*, No. 00-1524, 2002 WL 576115, at *2 (Iowa Ct. App. Feb. 20, 2002) (noting that an executor's wish "to maximize profits is entirely appropriate in light of the executor's fiduciary obligations" "to preserve and protect the estate's assets"). In this case, Pamela made no attempt to do so. Holdgrafer approached her with an offer to purchase the farmland, cattle, machinery, and buildings. Pamela made no attempt to determine whether other local farmers or any other persons had an interest in the property. Pamela made no attempt to discern the value of the chattel or real property being sold. She did not make any counteroffer. She did not obtain representation or professional assistance in evaluating or negotiating the deal. Her failure to obtain information and/or assistance in evaluating the value of the estate's assets prior to agreeing to sell them materially prejudiced the estate.

Pamela agreed to sell all of the 112 acres to Holdgrafer for $481,600 or $4300/acre. In concluding the sale was reasonable, the district court adjusted the purchase price to reflect that Holdgrafer actually purchased only 107 acres for $471,600, or $4407.48 per acre, because of the repurchase agreement. This adjustment was erroneous. The relevant question is not what Holdgrafer netted after the repurchase agreement was executed, it is what the estate received in exchange for the sale of the 112 acres, which was $481,600, or $4300/acre. The

price of $4300 per acre does not reflect fair market value for the property. Holdgrafer's lender, Farm Credit Services of America ("Farm Credit"), appraised the 112 acres and buildings at $560,391.[1] Appellants engaged Kane Appraisal Services ("Kane") to appraise the property. Kane valued the 112 acres and buildings at between $4495 to $5210/acre, with a reasonable value between $4800 and $4850/acre, for a total reasonable value of $540,000. Neither appraisal attempted to value the machinery or cattle included in the sale. Thus, the appraisals undervalue the total estate property included in the sale. At minimum, Pamela undervalued the property by at least ten percent. In and of itself, this failure to maximize the value of the estate would not necessarily lead us to conclude that the district court abused its discretion in failing to remove her. *See In re Estate of Amick*, 281 N.W. 786, 799 (Iowa 1938) (finding that "inadvertent failure" to include certain assets in the estate or to sell property for the payment of debts did not necessarily require removal of executors). That being said, the evidence of self-dealing in this case does warrant removal.

There is clear evidence that Pamela engaged in self-dealing. First, the inadequacy of consideration suggests self-dealing. *See Bettendorf v. Bettendorf*, 179 N.W. 444, 456 (Iowa 1920) (stating that "[e]vidence of inadequacy in prices raises a suspicion of unfair dealing"). Second, when directly asked in March 2013 by one of her siblings and co-beneficiaries, Carla, whether Pamela had reached an agreement to sell the farm, Pamela misrepresented to Carla there was no agreement. Third, Pamela did not disclose her full interest in the estate's

---

[1] Farm Credit mistakenly assumed the property was 115.5 acres instead of 112 acres. The stated valuation corrects for the error.

property. While it is true that the petition seeking approval of the sale to Holdgrafer disclosed Pamela and Larry's option to purchase the five-acre parcel, the petition did not disclose that Pamela and Larry already had entered into a purchase agreement to buy the same for $10,000, or $2000/acre. Her intent to clandestinely benefit from the estate can be inferred from her misrepresentation to her sibling and subsequent non-disclosure. Finally, and most important, the repurchase agreement showed that Pamela used estate assets to personally benefit herself. *See Snapp*, 502 N.W.2d at 33 ("Personal benefit in dealing with trust assets is clearly the signpost of self-dealing . . . ."). The $2000 per acre purchase price Pamela agreed to pay for the five acres is lower than the purchase price the estate charged Holdgrafer. On a per acre basis, it is also fifty to sixty percent below the Farm Credit and Kane appraised values. This does not include the value of the cattle and machinery that were also subject to the repurchase agreement.

Pamela contends that she did not engage in self-dealing because she purchased the farmland from Holdgrafer and not from the estate. We look to the substance of the transaction. Here, the estate sale to Holdgrafer initially was contingent upon Pamela and Larry obtaining the five-acre parcel. Later, the repurchase transaction was crafted only as an option to purchase. However, Pamela and Larry already had exercised the option. Whether the purchase agreement was contingent on the repurchase agreement or merely provided for an option to repurchase, the transactions were, in fact, linked together as one transaction. Using a third party to wash the transaction does not remove the dirt

of self-dealing. *See Lininger*, 297 N.W. at 311-12 (affirming removal of executor who used third party to buy estate property and then sell it back to executor). The substance of the singular transaction deprived the estate of chattel and real property below fair market value. The substance of the singular transaction also resulted in Pamela and Larry acquiring estate property for $2000/acre, which is to their personal benefit and to the detriment of the estate; *see also Coster v. Crookham*, 468 N.W.2d 802, 806 (Iowa 1991) (stating a fiduciary "cannot use [his] position, directly or indirectly, for [his] own advantage or profit").

Our courts have held either (1) that an executor engaged in self-dealing without full disclosure and court approval was correctly removed as executor or (2) the district court abused its discretion in failing to remove an executor under such circumstances. *Compare Rutter*, 633 N.W.2d at 751 (finding trial court abused its discretion in failing to remove the executor where executor made estate disbursements to his personal advantage); *In re Estate of Myers*, 294 N.W.2d 235, 235 (Iowa 1940) (affirming removal of executor and stating "[i]rregularities, such as the purchase by executors of property of the estate" warranted removal); *Randeris*, 523 N.W.2d at 606 (agreeing in removal of executor as executor "failed to obtain guidance from the court on several important matters which seriously compromised his judgment and his duties as executor and trustee"); *Jones*, 492 N.W.2d at 726-27 (reversing trial court's refusal to remove executor where executor had used her position as conservator and executor to benefit her son who had divergent interests from the other beneficiaries); *McDonald v. Windus*, No. 05-1276, 2007 WL 108467, at *5 (Iowa

Ct. App. Jan. 18, 2007) (finding evidence of self-dealing where fiduciary received a larger personal share of the estate, "thereby benefiting from her dealings as executor and trustee."); *with Phoenix*, 493 N.W.2d at 81 (finding executors should not be removed despite purchase of estate property because executors disclosed transaction, sought independent legal advice, paid fair market value, and obtained consent of five of six beneficiaries); *Zenisek*, 2009 WL 1211981, at *2 (affirming denial of petition to remove executor where executor purchased farmland after obtaining appraisal, appointing special administrator to evaluate the offer, and appointing counsel for beneficiary of estate to evaluate offer); *In re Estate of Baltimore*, No. 05-0173, 2006 WL 334214, at *2 (Iowa Ct. App. Feb. 15, 2006) (holding estate administrator's "purchase of an asset of the estate under his administration at a public auction after notice to [beneficiary] is proper"). Accordingly, we hold the district court abused its discretion in denying the petition for removal.

B.

We next address approval of the estate's sale of the 112 acres to Holdgrafer. "When an executor with authority to sell real estate enters into a contract for sale which is subject to the approval of the court, the court may refuse to approve the contract on the grounds it is not advantageous to the estate." *In re Estate of Day*, 521 N.W.2d 475, 478 (Iowa Ct. App. 1994). "Moreover, once a report of sale is submitted to the courts for approval, the court is permitted to reject the sale and enter such orders as it may deem advisable." *Id.* (citation and internal quotations marks omitted). "One of the primary concerns

of a court involved in a judicial sale should ordinarily be to obtain the highest price it can fairly procure." *Thornton*, 531 N.W.2d at 654; *see also In re Estate of Bruene*, 350 N.W.2d 209, 213 (Iowa Ct. App 1984) (approving of sale where land was sold for $125/acre over any other offer and where "executor and his broker actively sought to sell the land at the highest price obtainable"); *Waterman*, 2011 WL 768753, at *9 (approving the sale of estate property to executors where executors clearly demonstrated they were paying appropriate value for the property);

The district court approved the sale of 112 acres for $481,600. Farm Credit appraised the land and buildings at $560,391. Kane appraised the land and buildings at $540,000. Based on these appraisals, Pamela's sale undervalued the property by $78,791 to $58,400. Even assuming a substantial real estate commission, which is not necessarily a foregone conclusion, the approved sale substantially undervalued the property and detrimentally affected the total value of the estate. Accordingly, we set aside the sale of the property.

IV.

We conclude the executor engaged in self-dealing, and the district court abused its discretion in denying appellants' petition for removal. We also conclude the district court erred in approving the sale of the estate property to Holdgrafer under these facts and circumstances. The district court's order approving the sale and denying the petition for removal is reversed. On remand, the district court shall appoint a new executor to administer the estate.

**REVERSED AND REMANDED.**