**Mary J. ANDERSON, Plaintiff and Appellant,**

v.

**Charles D. ANDERSON, Defendant and Appellee.**

**Civ. No. 10752.**

Supreme Court of North Dakota.

May 22, 1985.

Vogel Law Firm, Mandan, for plaintiff and appellant; argued by Anne E. Summers, Mandan.

Mills & Moore, Bismarck, for defendant and appellee; argued by Sherry Mills Moore, Bismarck.

GIERKE, Justice.

Mary J. Anderson (Mary), appeals from a district court judgment granting her a divorce from Charles D. Anderson (Charles) and dividing the marital property. On appeal, Mary asserts that the trial court erred in making the property division. We reverse and remand for a redetermination of that issue.

Mary and Charles were married in 1967, and they have three children of the marriage: Charles, Jr., born on June 20, 1968; Christian, born on July 31, 1970; and Jennifer, born on November 20, 1974.

At the time of the marriage, Charles owned a one-sixth interest in approximately 280 acres of farmland, including mineral interests, near Underwood, North Dakota, which he had inherited from his father in 1961. No interest in the inherited land was ever transferred to Mary.

During the first two years of their marriage, the couple farmed the land inherited by Charles as well as additional land near Underwood owned by Charles' family. During this time, Mary assisted Charles in running the farm. After farming for approximately two years, Charles worked as

a self-employed truck driver until 1977. Mary testified that she taught school from 1971 until Jennifer was born in 1974. Thereafter, she was employed as a substitute teacher. In 1976, the couple purchased a house in Underwood, North Dakota. In 1977, Charles began working for his current employer, North American Coal, and, in 1982, he began participating in its retirement plan. At the time of trial, Charles' annual income was approximately $43,000.

The district court's judgment gave Mary custody of the three minor children, and awarded her $225 per month per child for child support and $300 a month for three years for rehabilitative support. In making its division of the property, the trial court found that the equity in the home in Underwood was approximately equal to Charles' retirement account and awarded the home to Mary, subject to mortgage, and the retirement account to Charles. The court also awarded Mary personal property valued at $12,000 and Charles personal property valued at $8,200. Charles was ordered to pay Mary $1,200 as a contribution toward her attorney's fees for the divorce and to pay all the debts of the couple with the exception of the Underwood home mortgage. The evidence presented at trial reflects that the mortgage was approximately $39,000 and the remaining debts were approximately $35,000. The district court determined that the inherited land was not a marital asset and that it was unnecessary to use it to equalize the division of the property. Accordingly, Charles was granted sole ownership of that land.

Mary asserts that the trial court's property division was erroneous. She contends that the trial court's decision was induced by an erroneous view of the law in failing to consider the inherited farmland in making its property division.

■■■ The trial court's determinations on matters of property division are treated as findings of fact and will not be set aside on appeal unless they are clearly erroneous under Rule 52(a), NDRCivP, or they are induced by an erroneous conception of the law. *Schmidt v. Schmidt*, 325 N.W.2d 230 (N.D.1982). Whenever a divorce is granted, Section 14–05–24, NDCC, requires the trial court to distribute the parties' real and personal property as may seem just and proper. Under Section 14–05–24, NDCC, the trial court must consider *all* of the real and personal property accumulated by the parties as part of their marital estate, regardless of the source. *Schmidt v. Schmidt, supra; Herrick v. Herrick*, 316 N.W.2d 72 (N.D.1982); *Fraase v. Fraase*, 315 N.W.2d 271 (N.D.1982). However, the trial court may or may not award the separate property of one spouse to the other spouse depending upon whether or not an equitable distribution so requires. *Schmidt v. Schmidt, supra; Herrick v. Herrick, supra; Fraase v. Fraase, supra.*

■■■ The *Ruff-Fischer*[1] guidelines give the trial court sufficient flexibility to consider the source of the property as one factor in arriving at an equitable distribution. *Winter v. Winter*, 338 N.W.2d 819 (N.D.1983). However, the separate property, whether inherited or otherwise, must initially be included in the marital estate and is subject to distribution as may be necessary to achieve an equitable distribution.

In this case, the trial court made the following relevant findings of fact:

"IX.

"The primary assets of the marriage are the automobile, the home and the employer retirement plan of Mr. Anderson. Mr. Anderson is unable to draw the money set aside in his retirement plan; however, it has been deposited in his name and all expectation would result in the fact that this would be available for him upon his retirement. The court

---

1. See *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952); *Fischer v. Fischer*, 139 N.W.2d 845 (N.D. 1966).

finds that the equity in the home is approximately equal to the retirement account of Mr. Anderson. Plaintiff [Mary] shall have the home of the parties, subject to the mortgage and the defendant [Charles] shall have his retirement account.

"X.

"The court finds that the farm land and mineral interests which the defendant [Charles] inherited from his father is not a marital asset and the defendant [Charles] is granted sole ownership in the mineral interest and farm land without any claim upon it by the plaintiff [Mary]. The court finds that it is unnecessary to use this asset in order to equalize a division made to the properties." [2]

The trial court's findings reflect that it excluded the farmland and mineral interests from the marital estate and divided the remaining assets approximately equally.[3]

The trial court stated that the primary assets of the marriage were an automobile, the house, and the retirement account, and it did not include the farmland and mineral interests as one of the primary assets even though Charles presented evidence that those assets had a value of $62,000. The trial court further stated that the farmland and mineral interests were not marital assets and that it was unnecessary to use them to equalize the property division. The marital assets, excluding the farmland and mineral interests, were distributed approximately equally. Although the trial court indicated that it was equalizing the distribution, when all the marital assets, including the farmland and mineral interests, are considered, the distribution was not equal. We are not suggesting that the division should have been equal. However, we believe the above-mentioned factors indicate that the trial court did not include the inherited farmland and mineral interests as part of the marital estate.

Consequently, we conclude that the trial court erroneously applied the law in that respect, and we reverse and remand with directions that the court make a redetermination of the property division taking into consideration that the farmland and mineral interests are part of the marital estate.

Mary also contends that the trial court erred in refusing to allow her witness, Bill Wilson, to testify to the value of the farmland. Wilson testified that he had rented the farmland from Charles' mother, Bertha Anderson, for five years and that he also owned farmland within three miles of Charles' land. He testified that in his capacity as a member of the Federal Land Bank in Minot, he was familiar with farm values in the area. At that point, Wilson was asked if he felt the value of the surface interest of the land was $25,000 as claimed by Charles. Mary's counsel objected, apparently on the basis of insufficient foundation, and the objection was sustained. Later the court stated:

"Counsel, I am not going to let this man testify as an expert on the land valuation. You have not established sufficient credentials and therefore I am not going to let him testify as to any purchases that were in the area that he was not a party to."

Whether or not a witness is qualified to testify as to the value of land is for the trial court to determine and will not be reversed on appeal unless it abused its discretion. *Jamestown Plumbing & Heating Co. v. City of Jamestown*, 164 N.W.2d 355 (N.D.1969); see *Holecek v. Janke*, 171 N.W.2d 94 (N.D.1969); *Fisher v. Suko*, 98 N.W.2d 895 (N.D.1959). Ordinarily, the owner of real property, by virtue of ownership, is presumed to have special knowledge of its value and may testify thereto without any further qualification or special knowledge. *Pfliger v. Peavey Co.*, 310 N.W.2d 742 (N.D.1981). A witness who does not own the land must demonstrate

---

2. The trial court's memorandum opinion states that "[i]t is unnecessary for the Court to use this asset in order to equalize the division made to the *parties* in this case." [Emphasis added.]

3. A property division does not have to be equal to be equitable. *E.g., Schmidt v. Schmidt,* 325 N.W.2d 230 (N.D.1982).

some basis of forming an intelligent judgment as to the value of the land in question. 31 Am.Jur.2d, Expert and Opinion Evidence, § 140, p. 691. In *Otter Tail Power Co. v. Malme*, 92 N.W.2d 514, 527 (N.D.1958), we stated:

> "Opinion evidence in eminent domain actions is usually admitted from persons who are not strictly experts, but who from residing and doing business in the vicinity have familiarized themselves with land values and are more able to form an opinion on the subject at issue than citizens generally. The rule is liberally applied in case of farm lands, as other evidence is often not easily obtained and neighboring farmers are able to judge values with reasonable accuracy if acquainted with the physical surroundings and the character of the soil."

■■■■ Although that case involved an eminent domain proceeding, we believe that the foregoing rationale for allowing a person who is peculiarly familiar with land to testify to its value is applicable in divorce cases as well. We believe Wilson's testimony demonstrates that he was sufficiently familiar with the general level of land values in the area to enable him to judge the value of Charles' land. We conclude that the trial court abused its discretion in refusing to let Wilson testify in that regard.

Accordingly, we reverse and remand the case to permit the parties to present evidence on the value of the farmland and for the trial court to make a redetermination of the property division.

ERICKSTAD, C.J., and MESCHKE, LEVINE and VANDE WALLE, JJ., concur.