In the Matter of the ESTATE OF Ernest P. ATWOOD, Deceased.

Ronald P. ATWOOD, Executor of the Estate of Ernest P. Atwood, Deceased, Appellant,

v.

Irene M. KONKEN, Appellee.

No. 96–1232.

Court of Appeals of Iowa.

Jan. 28, 1998.

Edward J. Gallagher, Jr. and Mary E. Chicchelly of Gallagher, Langlas & Gallagher, P.C., Waterloo, for appellant.

C.A. Frerichs of Frerichs Law Office, P.C., Waterloo, for appellee.

Heard by CADY, C.J., and SACKETT and HUITINK, JJ.

HUITINK, Judge.

Ronald Atwood, administrator of Ernest Atwood's estate, appeals from a judgment declaring Irene Konken was married to Ernest Atwood at the time he died and she was, as his surviving spouse, entitled to a share of his estate. Konken cross-appeals from the district court's denial of her application to remove Ronald Atwood as administrator of the estate and the district court's refusal to impose Rule 80(a) sanctions on the administrator for litigating her claim. We reverse on appeal and affirm on cross-appeal.

## I. Background Facts and Proceedings.

Ernest Atwood died on May 31, 1994. His son, Ronald E. Atwood, was appointed administrator of his estate. In May 1995, Konken initiated these proceedings seeking a declaratory judgment that she was married to Ernest Atwood at the time of his death. Konken initially claimed she was Atwood's common-law wife. After trial commenced, she amended her theory claiming a ceremonial marriage validated by the provisions of Iowa Code section 595.11.[1]

---

1. Iowa Code section 595.11 provides:
   **Nonstatutory solemnization—forfeiture.** Marriages solemnized, with the consent of the parties, in any manner other than that prescribed in this chapter, are valid; but the parties, and all persons aiding or abetting them, shall pay to the treasurer of state for deposit in the

The record includes historical evidence of Konken's relationship with Atwood both before and after an April 3, 1994, wedding ceremony. There is evidence the April 3, 1994, wedding ceremony was performed by a minister. Although Atwood and Konken did not obtain the required marriage license, this ceremony included traditional attributes of a formal wedding such as vows, photographs, and a marriage certificate completed by an ordained minister. The record also indicates both Atwood and Konken made conflicting statements about their marital status after the wedding. However, both consistently told others the unlicensed April 3, 1994, wedding ceremony was not legal and they could not be legally married because Konken would lose her John Deere surviving spouse's pension benefits.

The district court, after considering the conflicting representations of marital status, rejected Konken's common-law marriage claim citing insufficient proof of intent to marry or that Atwood and Konken "held themselves out as married." Konken's theory of a ceremonial marriage was also initially rejected because "the statements of Ernest and Irene both prior to the ceremony and after the ceremony indicate that they knew it was not legal." The district court also rejected the ceremonial marriage theory because it did not construe section 598.11 as validating a marriage ceremony performed in the absence of a marriage license. However, following Konken's Iowa Rule of Civil Procedure 179(b) motion, the district court concluded this construction of section 598.11 was incorrect, declared the marriage valid, and entered judgment accordingly.

## II. Standard of Review.

The district court tried this claim as a law action. Our review is accordingly for correction of errors. Iowa R.App.P. 4. We will affirm if there is substantial evidence to support the district court's findings. Iowa R.App.P. 14(f)(1).

## III. Validity of the Marriage.

The administrator argues Konken's claim fails under either a theory of common-law marriage or ceremonial marriage. He cites the district court's finding that Konken failed to prove intent to marry as dispositive of both theories. We agree.

We initially acknowledge the absence of error in the district court's construction of section 598.11. In *In re Stopps' Estate,* 244 Iowa 931, 57 N.W.2d 221 (Iowa 1953), the supreme court addressed the validity of common-law marriages in Iowa. In its decision the court discussed the legislature's intent regarding the necessity of obtaining a marriage license and the requirements to obtain a license at that time. *Id.* at 937, 57 N.W.2d at 224. The court stated "we do not find that the legislative intent to make void all marriages informally contracted without blood test *or license* sufficiently appears." *Id.* (emphasis added). The court quoted with approval:

> [A]s a general rule, a statute regulating marriages is construed as directory, and does not invalidate a marriage contracted in violation of its provisions, such as an informal or common-law marriage. A marriage contracted without complying with such a statute is valid, even though the statute provides for the civil or criminal punishment of those who fail to comply with it. . . .

*Id.* (quoting 55 C.J.S., Marriage § 7, 819–20).

While we agree that section 598.11 may validate a marriage solemnized without complying with the statutory licensing requirement, we reject the notion that it validates an otherwise invalid marriage. In other words, the statute does not obviate the need to establish a valid marriage contract. Iowa Code § 595.1.

Proof of intent to marry or mutual consent to marry is an essential element of a

general fund of the state the sum of fifty dollars each; but this shall not apply to the person conducting the marriage ceremony, if within

fifteen days thereafter the person makes the required return to the clerk of the district court.

successful common-law marriage claim. *In re Marriage of Winegard,* 278 N.W.2d 505, 510 (Iowa 1979). Mutuality of consent, with respect to common-law marriage, means just what it means in ordinary civil contracts. *In re Estate of Fisher,* 176 N.W.2d 801, 806 (Iowa 1970). In *Fisher* the court stated:

Marriage is a civil contract, requiring the consent of the parties capable of entering into other contracts * * *. Section 595.1, Code, 1966. Mutuality of consent means just what it means in ordinary civil contracts. *Brisbin v. Huntington,* 128 Iowa 166, 169, 103 N.W. 144; *Reppert v. Reppert,* 214 Iowa 17, 24, 241 N.W. 487. No particular form or ceremony is necessary, and all that is required is that the minds of the parties meet in mutual consent, and this is accomplished if they live together and in so doing intend to sustain the relationship of husband and wife but neither such intention nor consent can be inferred from cohabitation alone. *Brisbin v. Huntington,* 128 Iowa 166, 103 N.W. 144.

*Id.*

■ The record includes substantial evidence supporting the district court's finding that Atwood and Konken did not intend to marry. Most notable are Konken's and Atwood's conflicting representations of their marital status and their intent to avoid the legal implications of marriage by disregarding the requirement of a marriage license. Konken also failed to notify the social security administration that her marital status had changed. The coincidence of Konken's renewed enthusiasm for marriage and notification in April 1995 that her pension was not at risk as she earlier believed has not escaped our notice. Although evidence of intent to marry was conflicting, the district court resolved these conflicts against Konken. This factual determination is binding for purposes of appellate review.

■ We are unable to reconcile the district court's finding on the intent issue with its determination that this marriage was valid. If proof of intent was insufficient to establish a common-law marriage, it was also insufficient to prove the mutual consent necessary to the formation of the marriage contract. *Id.*

Konken's theory of a ceremonial marriage validated by section 598.11 is illusory. The notion that she was married for some purposes and not for others is in flagrant contradiction of the public policy behind the high standard of proof required to establish a valid marriage. We conclude, on this record, that no marriage contract was intended. The district court's judgment declaring this marriage valid is therefore reversed.

### IV. Cross-Appeal for Removal of Administrator.

■ Irene cross-appeals for removal of Ronald as administrator of Ernest's estate. Claims for removal of an administrator are tried in equity. Iowa Code § 633.33. We review equitable proceedings de novo. Iowa R.App. P. 4. We are not bound by the trial court's findings of fact, but we do give them deference because of the district court's trial perspective. *Id.; In re Marriage of Brown,* 487 N.W.2d 331, 332 (Iowa 1992). The trial court has broad discretion in deciding whether to remove an executor or trustee. *Estate of Randeris v. Randeris,* 523 N.W.2d 600, 605–06 (Iowa App.1994). The burden of proof the executor engaged in wrongful conduct sufficient for removal is upon those so asserting. *In the Matter of the Estate of Phoenix,* 493 N.W.2d 79, 81 (Iowa App.1992).

An executor is a fiduciary and is frequently referred to as a trustee for all interested parties. *Id.* Iowa Code section 633.155 (1981) states:

No fiduciary shall in any manner engage in self-dealing, except on order of court after notice to all interested persons, and shall derive no profit other than the fiduciary's distributive share in the estate from the sale or liquidation of any property belonging to the estate.

A fiduciary must manage an estate with the level of care an ordinary prudent man or woman would exercise under like circumstances in his or her own affairs. *See* 31 Am.Jur.2d, Executors and Administrators § 217; 28 A.L.R.3d 1191, 1195.

■ Grounds for the removal of an executor are statutory and include mismanagement of the estate and failure to perform any

duty imposed by law. Iowa Code § 633.65 (1993). A conflict of interest or unwarranted hostility between the executor and trustee and the beneficiaries may also support the removal of an executor. *Estate of Randeris v. Randeris,* 523 N.W.2d at 606 (citations omitted). Moreover, evidence the executor is using his or her position as a personal advantage may also serve as grounds for an executor's removal. *Matter of Estate of Jones,* 492 N.W.2d 723, 726 (Iowa App.1992).

Based upon our de novo review of the record, we find the district court did not abuse its discretion in denying Irene's motion for removal of Ronald as administrator of Ernest's estate. There is no evidence in the record which supports a finding Ronald breached any fiduciary duties, mismanaged Ernest's estate, or used his position as administrator for his personal advantage. We affirm the district court on this issue.

### V. Cross–Appeal for Sanctions.

We review the district court's denial of a motion for sanctions for an abuse of discretion. *Breitbach v. Christenson,* 541 N.W.2d 840, 845 (Iowa 1995); *Mathias v. Glandon,* 448 N.W.2d 443, 445 (Iowa 1989). We will not disturb the district court's findings of fact absent a finding they are clearly erroneous. *Dull v. Iowa Dist. Court,* 465 N.W.2d 296, 297 (Iowa App.1990) (citation omitted).

Konken's initial theory of recovery was based on a common-law marriage. The administrator raised a factual defense to this theory. Konken's statutory marriage theory was not asserted until after trial commenced. The administrator's defense was based on a good faith construction of Iowa Code section 598.11. We find the district court did not abuse its discretion by denying sanctions under these circumstances. We affirm on this issue.

**REVERSED ON APPEAL, AFFIRMED ON CROSS–APPEAL.**