# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2023 ND 154

In the Matter of the Estate of Allan Herbert Froemke, Deceased

| | |
|---|---|
| Reginald Froemke, Personal Representative, | Petitioner and Appellee |
| v. | |
| Terry Carter and Brenda Ciccone, | Respondents and Appellants |
| and | |
| Melody A. Reams, Debra L. Reinke, Duffy A. Froemke, Carrie Mennis, Benjamin P. Froemke, Stephanie A. Nielsen, LeeJoy Froemke, Andy Froemke, Jackie Freymiller, and Daniel J. Froemke, | Respondents |

## No. 20220321

Appeal from the District Court of Ransom County, Southeast Judicial District, the Honorable Mark T. Blumer, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice, in which Chief Justice Jensen and Justices McEvers and Bahr joined. Justice Crothers filed an opinion concurring in part and dissenting in part.

Michael T. Andrews (argued), Fargo, N.D., and Don B. Eppler (appeared), Lisbon, N.D., for petitioner and appellee.

Will R. Budke (argued), Wahpeton, N.D., and Brandon M. Erickson (appeared), Fargo, N.D., for respondents and appellants Terry Carter and Brenda Ciccone.

**Tufte, Justice.**

[¶1] Terry Carter and Brenda Ciccone appeal from a district court judgment in the informal probate of Allan Froemke's will. We affirm.

I

[¶2] Reginald Froemke, the personal representative of Allan Froemke's Estate, Terry Carter, and Brenda Ciccone are Allan Froemke's children. Reginald Froemke moved the district court to determine heirs, compute the distribution of the Estate's shares, determine debts owed by heirs to the Estate, allow the personal representative to sell property, and approve the personal representative's inventory. The court held an evidentiary hearing and issued findings, an order for judgment, and a judgment.

[¶3] Carter and Ciccone argue the district court lacked jurisdiction over a contract for deed involving Carter. They further argue the court erred in (1) finding Ciccone owed five thousand dollars to Allan Froemke's Estate, (2) its evidentiary rulings, (3) failing to address several pending issues, and (4) finding against partitioning property.

II

[¶4] Carter and Ciccone argue the district court lacked jurisdiction under Title 30.1, N.D.C.C., to order Carter to refund the Estate $1,603, because such an order was not a probate matter and the court lacked any other authority to issue this order. "When the jurisdictional facts are not in dispute, the question of subject-matter jurisdiction is a question of law, and we review the jurisdiction decision de novo." *In re Estate of Bartelson*, 2011 ND 219, ¶ 8, 806 N.W.2d 199. "If the underlying jurisdictional facts are disputed, this Court is presented with a mixed question of law and fact, and we review the question of law de novo and the district court's findings of fact under the clearly erroneous standard of review." *Fredericks v. Fredericks*, 2016 ND 234, ¶ 6, 888 N.W.2d 177. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after

reviewing all of the evidence, we are left with a definite and firm conviction a mistake has been made. *Matter of Estate of Brandt*, 2019 ND 87, ¶ 18, 924 N.W.2d 762.

[¶5]  One of the purposes of the Uniform Probate Code is to make the law uniform among adopting jurisdictions. N.D.C.C. § 30.1-01-02(2)(e); N.D.C.C. § 1-02-13. To this end, we consider decisions from other jurisdictions that have interpreted parallel provisions of the code. *Matter of Estate of Opatz*, 554 N.W.2d 813, 816 (N.D. 1996).

[¶6]  A district court's subject matter jurisdiction over probate matters is provided by N.D.C.C. § 30.1-02-02 [Uniform Probate Code (1969) § 1-302], which states:

> The district court has jurisdiction over all subject matter relating to guardianship, probate, and testamentary matters, including:
>   1. Estates of decedents, including construction of wills and determination of heirs and successors of decedents.
>   2. Estates of protected persons.
>   3. Protection of minors and incapacitated persons.
>   4. Trusts.

In addition, N.D.C.C. § 30.1-12-05 [Uniform Probate Code (1969) revised 2010 § 3-105] provides:

> Persons interested in decedents' estates … may petition the court for orders in formal proceedings within the court's jurisdiction, including those described in chapters 30.1-12 through 30.1-23. The court has exclusive jurisdiction of formal proceedings to determine how decedents' estates subject to the laws of this state are to be administered, expended, and distributed, including actions to determine title to property alleged to belong to the estate ….

[¶7]  Under section 30.1-12-05, N.D.C.C., district courts have exclusive jurisdiction "to determine title to property allegedly belonging to the estate." *Estate of Bartelson*, 2011 ND 219, ¶ 11. "Determining what property constitutes the estate goes to the very nature of the probate proceeding." *Id.*

"The important point is that the [district] court … should have unlimited power to hear and finally dispose of all matters relevant to determination of the extent of the decedent's estate and of the claims against it." Official Comment, Uniform Probate Code (1969) § 3-105. The Minnesota Court of Appeals, citing section 3-105 of the Uniform Probate Code, concluded a probate court had jurisdiction over an insurance contract between the decedent and the appellant because "the probate court has jurisdiction over all problems that arise in resolving an estate except those issues excluded by statute." *In re Estate of Sangren*, 504 N.W.2d 786, 788-89 (Minn. Ct. App. 1993).

[¶8]  Personal Representative Reginald Froemke moved the district court to find Carter owed the Estate $1,603 for the payment of real estate taxes on her home by decedent. The court found $1,603 from Allan Froemke's account was paid to Ransom County for taxes billed to Carter and Carter had not reimbursed Allan Froemke's Estate. The court ordered Carter to reimburse the Estate for this amount.

[¶9]  The language in N.D.C.C. §§ 30.1-02-02 and 30.1-12-05 is broad. District courts have "jurisdiction over *all* subject matter relating to … probate." N.D.C.C. § 30.1-02-02 (emphasis added). We conclude the district court has subject matter jurisdiction over this issue.

III

[¶10] Carter and Ciccone assert the district court's finding Ciccone owed the Estate $5,000 was clearly erroneous, arguing this Court should have a definite and firm conviction that a mistake was made. "We will not reexamine findings of fact made by the trial court upon conflicting evidence, and a choice between two permissible views of the weight of the evidence is not clearly erroneous." *Lindstaedt v. George*, 2020 ND 262, ¶ 6, 952 N.W.2d 102 (cleaned up). We will not reverse simply because we may have viewed the evidence differently. *Id.*

[¶11] The district court found Ciccone owed the Estate $5,000 and ordered her to pay this amount. The court's finding and order were based on the fact that a check payable to Ciccone for $5,000 with the word "loan" written on it was drawn in 2014. Carter and Ciccone argue the trial court's finding is clearly

erroneous because they both testified the word "loan" was not in Allan Froemke's handwriting and could have been written by anyone at any time, no evidence was presented that Ciccone deposited this check, Ciccone did not recall receiving the check, Reginald Froemke testified he was not sure the check had been deposited, and no evidence was presented that this check was for a loan from Allan Froemke to Ciccone. However, the record includes Allan Froemke's bank statement, which contains an image of a check drawn to the order of Brenda Ciccone for $5,000 with the word loan written on it. This exhibit shows when the check was received for processing by Allan Froemke's bank it had "loan" written on it. This is evidence the word "loan" was already on the check when it was cashed or deposited by Ciccone. Carter and Ciccone are asking this Court to reweigh evidence. The testimony and exhibit support the court's finding, and we are not firmly convinced a mistake has been made. The district court's finding is not clearly erroneous.

IV

[¶12] Carter and Ciccone argue the district court abused its discretion by admitting and relying upon inadmissible evidence. "A trial court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably, or when its decision is not the product of a rational mental process." *Kershaw v. Finnson*, 2022 ND 165, ¶ 6, 980 N.W.2d 40 (quotations and citations omitted). "Whether or not a witness is qualified to testify as to the value of land is for the trial court to determine and will not be reversed on appeal unless it abused its discretion." *Anderson v. Anderson*, 368 N.W.2d 566, 569 (N.D. 1985).

[¶13] A party arguing for reversal because a district court admitted inadmissible evidence has a high burden on appeal from a bench trial.

> In the trial of a nonjury case, it is virtually impossible for a trial judge to commit reversible error by receiving incompetent evidence, whether objected to or not. An appellate court will not reverse a judgment in a nonjury case because of the admission of incompetent evidence, unless all of the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made.

4

*Zundel v. Zundel*, 2020 ND 150, ¶ 29, 945 N.W.2d 297.

A

[¶14] Carter and Ciccone argue the district court erred in admitting the appraised value of the farmland, because it was inadmissible hearsay in violation of N.D.R.Ev. 801(c) and 802. Here, Reginald Froemke testified an appraisal by Fadness Realty valued two of Allan Froemke's properties at $120,000 and $135,000.

[¶15] "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *State v. Vickerman*, 2022 ND 184, ¶ 9, 981 N.W.2d 881 (citing N.D.R.Ev. 801(c)-(c)(2)). Hearsay is inadmissible unless otherwise provided in statute or court rule. N.D.R.Ev. 802.

[¶16] Reginald Froemke argues the district court did not err in admitting statements about the appraised values, because they were admissible as a statement by the owner of the property, citing to *Miller v. Argumaniz,* 479 S.W.3d 306, 312 (Tex. App. 2015).

> The property owner rule, which falls under Texas Rule of Evidence 701, permits a property owner to give opinion testimony about the value of his or her property. Such testimony may not be based solely upon the property owner's *ipse dixit*, or mere "say-so," but is instead subject to the same requirements as other opinion testimony. Under Rule 701, lay opinion testimony is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

*Miller*, at 312 (cleaned up). This rule presumes a landowner will be familiar with his property and will know its value; therefore, an owner may testify to value of property even if that owner is not an expert and would not be able to testify to the value of other property. *Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 852 (Tex. 2011). In *Miller*, the property owner based her opinion testimony on an appraisal, and the Texas appellate court agreed this appraisal was hearsay, but the district court did not err in

5

admitting the property owner's opinion because "[l]ike expert testimony, 'landowner valuation testimony may be based on hearsay.'" *Miller*, at 312 (quoting *Natural Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 157-58 (Tex. 2012)).

[¶17] North Dakota law recognizes this presumption. "The general rule is that an owner of property may testify without qualification other than the fact of ownership as to its value." *See Pfliger v. Peavey Co.*, 310 N.W.2d 742, 747 (N.D. 1981). Hearsay rules do not prevent a property owner from presenting opinion testimony about the value of his property even if his opinion relies "upon information from another." *Id.* at 748 (affirming admission of a party's opinion testimony about the value of a building based in part on a company's estimate of repair costs) (citing *Baber v. Dennis*, 66 Ohio App.2d 1, 419 N.E.2d 16 (1979)).

[¶18] This Court has concluded opinion evidence regarding the value of land by other lay witnesses is also admissible. *Anderson v. Anderson*, 368 N.W.2d 566, 569-70 (N.D. 1985). "A witness who does not own the land must demonstrate some basis of forming an intelligent judgment as to the value of the land in question." *Id.* (citing 31 Am. Jur. 2d, *Expert and Opinion Evidence*, § 140, p. 691 [now 31A Am. Jur. 2d, *Expert and Opinion Evidence*, § 234]).

> Opinion evidence in eminent domain actions is usually admitted from persons who are not strictly experts, but who from residing and doing business in the vicinity have familiarized themselves with land values and are more able to form an opinion on the subject at issue than citizens generally. The rule is liberally applied in case of farm lands, as other evidence is often not easily obtained and neighboring farmers are able to judge values with reasonable accuracy if acquainted with the physical surroundings and the character of the soil.

*Id.* at 570. This Court concluded the record contained sufficient facts for the district court to conclude that a witness "was sufficiently familiar with the general level of land values in the area to enable him" to testify about the value of farm land at the trial because that witness testified that he rented the property at issue for five years, owned farmland within three miles of that

6

property, and was generally familiar with area land values because he was a member of the Federal Land Bank in Minot. *Id*. at 569-70.

[¶19] Here, the record contains evidence Reginald Froemke had personal familiarity with Allan Froemke's property sufficient to testify about its value. Reginald Froemke is Allan Froemke's personal representative and had been his power of attorney since 2002. As power of attorney, Reginald Froemke managed Allan Froemke's properties while he was still alive. As personal representative, he has the right to possess the property for purposes of administration and "has the same power over the title to property of the estate that an absolute owner would have, in trust however, for the benefit of the creditors and others interested in the estate." *Estate of Johnson*, 2015 ND 110, ¶¶ 14-15, 863 N.W.2d 215. His testimony about the value of the property, including his reliance on the appraisals he received, was permitted by N.D.R.Ev. 701.

## B

[¶20] Carter and Ciccone argue the district court's finding the farmstead was appraised at $98,700 is clearly erroneous because nothing in the record supports the finding. At trial, Reginald Froemke testified that the Estate had received a written bid for the farmstead "as is" for $70,000. He testified the house needed various repairs and he had received a $12,000 estimate to repair the roof. He testified that the value of the farmstead in 2020 was $98,700 and that everyone in the family had been given an opportunity to bid on it. He asked the court to approve sale of the farmstead for the bid price. He testified as follows about his opinion of the value of the farmstead, as supported by an appraisal and his testimony about the condition of the property following that appraisal, including the bids to repair the damage since the appraisal:

> Q. The farmstead is valued at $98,700; correct?
> A. Correct.
> Q. And you cannot obtain top dollar on that farmstead from family; correct?
> A. I can't get it — or I mean I have a bid. But I do not believe that the farmstead is worth that because of the damage that's done to it.

Q. So you cannot receive — you haven't received a bid for the fair market value of that appraisal; correct?
A. No.
Q. But you're asking the Court to sell it anyway; right?
A. I am.
….
Q. Have you ever thought about employing a real estate agent or anything to help with marketing the land to try and get a better value for it?
A. I haven't.
Q. Okay. I think you testified earlier it's just your opinion that you're getting a good deal for the land; is that correct?
A. Well, the man's an appraiser. I'm taking his word for it.
Q. The one where he told you — did he ever write anything down or give you something in writing for that?
A. Yeah. We got a packet of papers this thick that showed the current values at that time — or stuff that was selling around in our community —
Q. In the same area so it showed the value?
A. — and the house — it showed he had houses and he had — I mean, there's a stack of papers this thick.

[¶21] The district court found:

Reginald has obtained a bid from Benjie Froemke to purchase the farmstead owned by the estate in Section 11 of Big Bend Township for $70,000. No other bids have been received for the farmstead. Bruce Fadness of Fadness Realty and Appraisal appraised the farmstead for $98,700 as of April 14, 2020, the date of Allan's death. The residence has been unoccupied for five years and substantial repairs are needed to the roof, ceilings, carpets, bathrooms, and the deck. The condition of the residence deteriorated prior to and since Allan's death, and the property is not worth $98,700.
….
The Personal Representative testified that he has received a bid of $70,000 for the estate's farmstead, and that said bid is for the property "as-is." The Personal Representative testified that the property deteriorated in value prior to Allan's death, and subsequently, and that he believes the current value to be $70,000. The property was offered to sale to all of the heirs, and no one else has bid, nor was evidence offered to contradict the Personal

8

Representative's valuation of $70,000. Substantial repairs are needed to bring the property's value up to the appraised value of $98,700. The Personal Representative also testified that owning the residence is costing the estate money every month for utilities, insurance, and real estate taxes. The Court concludes that it is in the best interests of the estate to sell the farmstead as soon as possible for the bid received.

[¶22] The court approved the amended inventory, which valued the farmstead at $70,000. Froemke's testimony about the value of Allan Froemke's property included hearsay as part of his basis for that opinion. A lay opinion may rely on hearsay, and testimony about that hearsay basis is permissible. *Anderson*, 368 N.W.2d at 569-70; *Peavey Co.*, 310 N.W.2d at 748. The district court found the farmstead value at the time of death was $98,700 but the property had deteriorated and should be sold at a value of $70,000 because it cost the Estate money every month. The court's findings on valuation are supported by the evidence and are not clearly erroneous.

C

[¶23] Carter and Ciccone argue that the district court's finding Roland and Debra Reinke would withdraw or reduce their bid was based on hearsay.

[¶24] Hearsay is generally inadmissible. N.D.R.Ev. 802. Hearsay is a statement that "the declarant does not make while testifying at the current trial or hearing" and that "a party offers in evidence to prove the truth of the matter asserted in the statement." N.D.R.Ev. 801(c)-(c)(2).

[¶25] Out-of-court statements are not hearsay when offered to prove something other than the truth of the matter asserted. *State v. Guttormson*, 2015 ND 235, ¶ 9, 869 N.W.2d 737. "[I]t is only when a statement is offered to prove the truth of the matter asserted that there is a lack of the safeguards used to insure credibility of the declarant." N.D.R.Ev. 801, Explanatory Note. "It is this lack of an oath and cross-examination of the declarant that warrants the exclusion of evidence as hearsay." *Id*. Out-of-court statements are non-hearsay if they are offered for their independent legal significance where "[t]he

9

utterance of the words is, in itself, an operative fact which gives rise to legal consequences." *Towne v. Dinius*, 1997 ND 125, ¶ 13, 565 N.W.2d 762.

[¶26] In *Towne v. Dinius*, Towne asserted George Dinius told him a car had its original frame and warranted that the vehicle was "road worthy." 1997 ND 125, ¶ 2. George Dinius died and Towne brought an action against Marilyn Dinius. *Id.* at ¶¶ 2-3. She argued George Dinius' statements during negotiations were inadmissible hearsay. *Id.* at ¶ 13. This Court concluded, however, George Dinius' statements were not offered to prove the truth of the matter asserted; rather, Towne offered them to demonstrate "the terms and conditions of the parties' contract." *Id.* at ¶ 13. "Towne is not seeking to use George's statements to show that the car actually had its original frame and was roadworthy, but merely to prove that George made the statements." *Id.* George Dinius' statements constituted verbal acts that carried "independent legal significance."

[¶27] On direct examination, Reginald Froemke was asked whether Roland and Debra Reinke, who placed a bid on his father's land, would still be interested in buying the land if it were subdivided. The district court overruled a hearsay objection by Ciccone's attorney because Reginald Froemke "discussed it personally and this is your understanding of whether or not it would sell." Reginald Froemke was asked whether Reinke "indicate[d] whether he would still be willing to buy the rest of the land." Reginald Froemke then explained his understanding from the conversation with Reinke was that Reinke would not buy the land if it was subdivided, "Not at the price he quoted," and concluded, "I don't think they'd want to buy it." The court found:

> If the farmland in Section 2 is partitioned in order to allow Terry to receive land as part of her inheritance, the bid of Roland Reinke and Debra Reinke will be withdrawn or reduced so that the other heirs will receive a lower price per acre for their share of the land.

[¶28] Reginald Froemke's summary of his out-of-court conversation with Reinke regarding whether or not he would still be interested in buying the land after it was subdivided describes an out-of-court statement. Used for its truth, the statement tends to prove Reinke's state of mind at the time regarding his future intent or plan to withdraw his bid if the land was partitioned. The

statement is direct evidence of Reinke's intent to withdraw an offer in the event the property was subdivided, admissible under N.D.R.Ev. 803(3). *See* 5 *Weinstein's Federal Evidence* § 803.05 (2023) (citing *Mutual Life Ins. Co. v. Hillmon*, 145 U.S. 285, 12 S. Ct. 909, 36 L. Ed. 706 (1892)); *Dillon v. Commonwealth*, 475 S.W.3d 1, 23 (Ky. 2015) (explaining statements about the future fall under state of mind exception). The statement is also admissible for the fact that it was said. For this purpose, it tends to prove Reinke told Reginald Froemke he would withdraw his bid if the land was divided, whether or not that was his true intention. *See also State v. Bernstein*, 2005 ND APP 6, ¶ 23, 697 N.W.2d 371 (explaining "a statement offered to show its effect upon the state of mind of the listener, rather than the truth of the matter asserted, is not hearsay" and the "nonhearsay use has been invoked with respect to the issue of . . . knowledge or belief"). "In a bench trial, it is presumed the district court only considered competent evidence because a judge, when deliberating the ultimate decision, is capable of distinguishing between admissible and inadmissible evidence." *Senger v. Senger*, 2022 ND 229, ¶ 16, 983 N.W.2d 160.

[¶29] Although the district court phrased its finding as a truth claim, it was a statement about the future, so it can be understood as true only in terms of describing Debra and Roland Reinke's intent at the time. The district court did not abuse its discretion in considering this testimony.

V

[¶30] Carter and Ciccone make several arguments the district court abused its discretion by failing to address non-frivolous issues raised in their response to Reginald Froemke's motion to determine heirs, determine amounts owing, approve inventory, and for an order to sell property. "A district court abuses its discretion when it fails to address nonfrivolous issues presented to the court." *Eagleman v. State*, 2016 ND 54, ¶ 19, 877 N.W.2d 1. (quotations and citations omitted). "A district court abuses its discretion only if it acts in an arbitrary, unreasonable, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law." *Id*. (quotations and citations omitted). If we determine the district court erred, we will not reverse if the error was harmless. "[A]n error is harmless if it does not affect the outcome of the case

11

or a party's substantial rights." *Senger*, 2022 ND 229, ¶ 12; N.D.R.Civ.P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

## A

[¶31] In response to Reginald Froemke's motion, Carter and Ciccone argued he breached his fiduciary duty by mailing an inventory after the time required by N.D.C.C. § 30.1-18-06(1), and requested the court order a complete inventory listing the property "in detail" with "accurate valuations." Because the district court did not discuss the issue in its order, we "deem it denied." *Matter of Emelia Hirsch, June 9, 1994, Irrevocable Tr.*, 2022 ND 89, ¶ 13, 973 N.W.2d 427. A personal representative has the statutory duty to prepare and file an inventory of the decedent's property at the time of death, which must list the property with "reasonable detail" and indicate each item's fair market value on the date of the decedent's death. N.D.C.C. § 30.1-18-06(1). The personal representative must also include "the type and amount of any encumbrance that may exist with reference to any item." *Id.* A personal representative must complete these tasks "[w]ithin six months after appointment, or nine months after the death of the decedent, whichever is later." *Id.*

[¶32] Allan Froemke died on April 14, 2020, and the district court appointed Reginald Froemke personal representative on October 30, 2020. Therefore, he was required to submit the inventory by April 30, 2021. N.D.C.C. § 30.1-18-06(1). Carter and Ciccone argue Reginald Froemke untimely mailed or filed an inventory on June 23, 2021. Carter and Ciccone did not argue to the district court or on appeal how delay in preparing an inventory beyond the statutory deadline harmed the estate or their interest in it. We conclude the district court did not abuse its discretion by declining to more fully discuss the untimeliness of the inventory.

## B

[¶33] Carter and Ciccone argue the district court abused its discretion in declining to address whether Reginald Froemke filed an incomplete inventory

12

in violation of N.D.C.C. § 30.1-18-06(1) because he collectively listed various items of personal property and 75 vehicles as inventory items three and four, respectively. A personal representative "shall prepare and file or mail an inventory of property owned by the decedent at the time of the decedent's death, listing it with reasonable detail …." N.D.C.C. § 30.1-18-06(1). Section 30.1-18-06(1), N.D.C.C., does not require a personal representative to list each item individually; it requires him to list items in the estate with "reasonable detail." The inventory had "reasonable detail" because item three has a collective value of $1,000, and the vehicles in item four, 75 units, are valued collectively at $12,000, or approximately $160 per unit. The court did not abuse its discretion.

[¶34] Carter and Ciccone argue the district court erred in not addressing their argument Reginald Froemke did not include a 1978 or 1979 green pickup truck and a tractor on the inventory. Item ten of the inventory references a "1979 green Chevrolet pickup." In addition, "tractors" were included in item four. The record shows the court considered the pickup truck and tractor.

C

[¶35] Carter and Ciccone argue Reginald Froemke breached his fiduciary duty because he has not expeditiously settled and distributed the Estate, he failed to distribute the "Various Personal Property" with an estimated value of $1,000 in accordance with the wishes in the will, he failed to diligently advertise the house, which has led to its disrepair and diminished value, and he failed to include tools, equipment, inventory, and two vehicles, a Ford model A and a Nash, on the inventory, and because he reassigned the two vehicles to himself. The district court did not find a breach of fiduciary duty. To the contrary, the court approved the amended inventory and found the proposed actions were in the best interests of the Estate. We review this issue for clear error.

[¶36] "The personal representative must settle and distribute the estate as expeditiously and efficiently as is consistent with the best interests of the estate." *Matter of Estate of Thomas*, 532 N.W.2d 676, 686 (N.D. 1995). "If the personal representative sells estate property, he must obtain the best possible price." *Id.* This Court found a personal representative breached his fiduciary

13

duties because he "testified he did not know what assets the corporation owned, did not know the value of those assets, never looked at any financial records of the company, and did not employ an outside appraiser to value the corporation or its assets," and because he sold assets without inquiring into their actual value. *Id*. Reginald Froemke had the property appraised, obtained bids for property equal to their appraised value, and pursued debts owed to the Estate.

[¶37] "The testator's intent, as expressed in the will, controls the legal effect of the testator's dispositions." *Matter of Estate of Peterson*, 1997 ND 48, ¶ 14, 561 N.W.2d 618 (quotations and citations omitted). A "personal representative has the same power over the title to property of the estate that an absolute owner would have, in trust however, for the benefit of the creditors and others interested in the estate. This power may be exercised without notice, hearing, or order of court." N.D.C.C. § 30.1-18-11 [Uniform Probate Code (1969) § 3-711]. The will required the Estate, after both parents' deaths, to distribute property equally to Allan Froemke's living children or their descendants by right of survivorship. Here, Reginald Froemke had the authority to sell the "Various Personal Property." After the sale, a personal representative may distribute the proceeds of the sale to the devisees under the will.

[¶38] Carter and Ciccone assert Reginald Froemke also failed to apply any income to protect the home from damage and loss under N.D.C.C. § 30.1-18-15(15). "[A] personal representative, acting reasonably for the benefit of the interested persons, may properly . . . [i]nsure the assets of the estate against damage, loss, and liability and the personal representative against liability as to third persons." N.D.C.C. § 30.1-18-15(15). Reginald Froemke testified the Estate did not have sufficient assets to repair the roof. He also testified he received a bid for the sale of the house.

[¶39] Carter and Ciccone argue the district court erred in not considering whether Reginald Froemke breached his duties because he failed to include tools, equipment, inventory, and two vehicles, a Ford model A and a Nash, on the inventory, and because he reassigned the two vehicles to himself. The inventory lists various personal property, and in item 4, "Trucks, pickups, cars, tractors, bus, trailer (about 75 units)" with a collective value of $12,000. We

14

conclude this description is sufficient under N.D.C.C. § 30.1-18-06(1). Carter and Ciccone do not cite to any evidence in the record Reginald Froemke reassigned the vehicles to himself. It is undisputed a title transfer of the Nash or Ford Model A vehicles did not occur.

[¶40] The evidence in the record supports the district court's findings. The district court did not clearly err in its findings or abuse its discretion in granting Reginald Froemke's motion and rejecting the claims Reginald Froemke breached his fiduciary duties.

VI

[¶41] We have considered other issues argued on appeal by Carter and Ciccone, and we conclude they either lack merit or are unnecessary to our decision. We affirm the judgment of the district court.

[¶42] Jon J. Jensen, C.J.
      Lisa Fair McEvers
      Jerod E. Tufte
      Douglas A. Bahr

**Crothers, Justice, concurring in part and dissenting in part.**

[¶43] I agree with the majority's factual description in Part I and its dispositions in Parts II, III, and Part V. I respectfully dissent from Part IV (A) and (B) regarding admission of evidence about valuation of the farmland and farmstead. I would reverse the district court and remand for findings made without consideration of the improperly admitted evidence.

[¶44] Carter and Ciccone argue the district court erred in admitting Froemke's testimony about a third party's appraisal value of the farmland because it was inadmissible hearsay, admitted in violation of N.D.R.Ev. 801(c) and 802. Froemke testified that Fadness Realty appraised Allan Froemke's farmlands at $120,000 and $135,000, and the farmstead at $98,700. The majority concludes the district court did not err in admitting this evidence. For the reasons stated below, I cannot agree.

15

[¶45] "'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." N.D.R.Ev. 801(c). A "statement" includes both oral and written assertions. N.D.R.Ev. 801(a). Hearsay is not admissible unless permitted by a statute, the North Dakota Rules of Evidence, or our other rules. N.D.R.Ev. 802.

[¶46] The majority affirms the district court under the property owner rule, which allows a testifying owner to express opinions about valuation. Majority opinion, ¶¶ 16-17. I disagree we can affirm on that basis because the district court did not even mention much less rely on the rule in admitting the evidence here, he was not the owner and therefore did not qualify to provide owner opinion evidence of value, and no foundation was provided for Reginald Froemke to give valuation opinion testimony.

[¶47] As acknowledged by the majority, Reginald Froemke was Allan Froemke's power of attorney and personal representative. Majority opinion, ¶ 19. As a non-owner, Reginald Froemke perhaps could have expressed an opinion of value if he otherwise qualified under N.D.R.Ev. 701 or 702 to provide opinion evidence. *See Anderson v. Anderson*, 368 N.W.2d 566, 569-70 (N.D. 1985) ("A witness who does not own the land, must demonstrate some basis of forming an intelligent judgment as to the value of the land in question."). Instead of qualifying Reginald Froemke to give opinion testimony, and instead of providing foundation for admission of the appraisal, Reginald Froemke was asked for the appraiser's valuation of Allan Froemke's farmland. Carter objected based on hearsay. Regarding the objection about the section two property, the court requested Reginald Froemke's attorney to lay more foundation and then allowed Reginald Froemke to testify about the appraised value, apparently because he "received documents and sat down and discussed those documents" with the appraiser. Regarding the objection over the section eleven property, the court requested Reginald Froemke's attorney to rephrase the question and then overruled the objection because Reginald Froemke testified he received a document conveying the appraisal value and discussed the appraisal with the appraiser. Reginald Froemke testified the section two

16

property was appraised at $120,000 and the section eleven property at $135,000.

[¶48] Reginald Froemke was not asked, and did not testify, about his opinion of the properties' fair market values—as an owner or otherwise. Rather, he was only asked for the value the appraiser attributed to the land. His answers about statements in a third party's appraisals were hearsay, and no exception applies. *See Johnson v. Buskohl Constr. Inc.,* 2015 ND 268, ¶¶ 5-6, 17-27, 871 N.W.2d 459 (building company's out-of-court statement estimating the cost to fix a deck was hearsay and no exception applied). The district court therefore abused its discretion overruling the objections to Reginald Froemke's testimony about the appraisal valuations.

[¶49] Because the district court erred by admitting Reginald Froemke's valuation testimony, this Court is required to decide whether the error was harmless. N.D.R.Civ.P. 61 ("Unless justice requires otherwise, no error in admitting or excluding evidence, or any other error by the court or a party, is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."). We will not reverse a judgment in a bench trial due to admission of "incompetent evidence" unless "all of the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made." *Fuhrman v. Fuhrman,* 254 N.W.2d 97, 99 (N.D. 1977) (cleaned up).

[¶50] Here, the district court's findings and valuation of the farmland only came from Reginald Froemke's testimony about the appraiser's opinion of value. The court's finding about whether the farmstead sold for a reasonable amount start with, and are incomplete without, the hearsay appraised value. Majority opinion, ¶ 21. The appraisals were not introduced into evidence, and the court was not provided with any other valuation evidence. Reginald Froemke's inadmissible valuation testimony was the only support for the court's essential findings of fact on values of the real estate, leaving us with no alternative than to conclude the hearsay adversely affected the appellants'

substantial rights. *Haas v. Hudson & Wylie LLP,* 2020 ND 65, ¶¶ 15-17, 940 N.W.2d 650. Therefore, I would reverse and remand for findings made without consideration of the improperly admitted evidence.

[¶51] Daniel J. Crothers