# IN THE COURT OF APPEALS OF IOWA

---

No. 25-0123
Filed February 11, 2026

---

**In the Matter of the Estate of Gloria J. Pflughaupt, deceased.**
Plaintiff–Appellant,

v.

**Cabrina Bell and Jamie Pflughaupt,**
Defendants–Appellees.

---

Appeal from the Iowa District Court for Linn County,
The Honorable Mark D. Fisher, Judge.

---

**AFFIRMED AND REMANDED**

---

Jenny L. Weiss of Fuerste, Carew, Juergens & Sudmeier, P.C., Dubuque,
attorney for appellant.

Jennifer L. Zahradnik, Belle Plaine, attorney for appellees.

---

Considered without oral argument
by Schumacher, P.J., and Badding and Langholz, JJ.
Opinion by Badding, J.

**BADDING, Judge.**

Gloria Pflughaupt died in October 2022, leaving her Linn County farm to be divided equally between her four children.  The Pflughaupt siblings—who do not get along—agree that the farm should be sold, but they disagree on the appropriate buyer and price.  The probate court resolved their impasse by removing Gloria's eldest children as executors and ordering the land to be sold at public auction.  The executors now appeal.  Finding no abuse of discretion, we affirm the probate court's order and remand for further proceedings.

## I.      Background Facts and Proceedings

Nobody disputes the clear and concise terms of the Last Will and Testament of Gloria J. Pflughaupt.  After a series of specific bequests to her grandkids, the residue of Gloria's estate is to be equally divided among her four children: Cabrina Ball, James ( Jim) Pflughaupt Jr., Kimberlee Leopold, and Jordan Pflughaupt.  Gloria nominated her eldest daughter and son—Cabrina and Jim—to serve as her executors.  They were appointed to that role in November 2022 when the will was admitted to probate.

The primary asset in Gloria's estate is her Linn County farm, which includes about 104 acres of cropland, 24 acres of non-tillable terrain, and a small homestead.[1]  In January 2023, an agricultural land broker issued a "Broker's Price Opinion," placing the total value of this real estate at $1.2 million as of Gloria's date of death.  The broker's opinion was not a comprehensive appraisal but was instead based on the broker's "general

---

[1] At the time of Gloria's death, nearly all of the property's tillable acres were enrolled in the federal Conservation Reserve Program (CRP) under a contract that required them to remain unfarmed through 2026.

knowledge of real estate values in the area, an inspection of the farm, and the analysis of comparable sales." The executors listed the $1.2 million figure in a report and inventory distributed to all beneficiaries in April 2023.

Each of the Pflughaupt siblings is interested in owning part of the farm, but they do not want to share it four ways. In July 2023, Jordan and Kimberlee offered to buy their older siblings' interests in the real estate for $600,000—matching the $1.2 million valuation. Alternatively, they suggested that the farm be sold to the highest bidder at a public auction. Cabrina and Jim rejected these proposals without further discussion. Cabrina later testified that the executors "had several offers" that "totaled more value."

Exactly what other offers the executors received is not a part of our record. What we do know is that a few months later, Cabrina and Jim entered into contracts to buy the land themselves. After having the land surveyed, they proposed a transaction that would divide the farm into three parcels: one would be sold to Cabrina, another to Jim, and a third would be purchased by a neighbor. In a petition for authority to proceed with the sale, the executors argued that the total return for the estate—about $1.26 million—exceeded the fair market value identified in the January 2023 broker's opinion. They did not, however, have the three parcels separately valued. The broker later testified that the parcels had different corn suitability ratings,[2] which would affect their value if sold as individual tracts.

---

[2] The broker explained that a corn suitability rating is derived from "an index of soil quality developed at Iowa State in conjunction with the USDA" that rates "how productive a soil is for crop production." The rating is made on a scale from 5 to 100, "and the higher the number, the better."

Jordan and Kimberlee objected, arguing that while the sum of the proposed sale exceeded their previous offer, Cabrina and Jim had undervalued the parcels they planned to purchase. They also asked the court to remove Cabrina and Jim as co-executors. In addition to their complaints about the land, Jordan and Kimberlee accused their siblings of misusing estate property, delaying the probate process, and withholding information from the beneficiaries.

Following two days of evidence, the probate court entered an order rejecting the executors' proposed sale and directing that the farm be sold at public auction. It removed Cabrina and Jim as co-executors, appointing an attorney as their successor. Cabrina and Jim have appealed this order, and the sale of the farm has since been stayed. Although the probate process is not yet complete, we have jurisdiction to review the court's order at this stage. *See* Iowa Code § 633.36 (2025); *In re Est. of Troester*, 331 N.W.2d 123, 126 (Iowa 1983).

## II.    Standard of Review

Because probate proceedings are tried in equity, our review is de novo. *In re Est. of Rutter*, 633 N.W.2d 740, 746 (Iowa 2001). That said, the probate court has wide discretion when deciding whether to remove an executor. *Id.* at 749. The court also has discretion when it comes to approving or denying the sale of estate assets. *See* Iowa Code §§ 633.389, .399 (2023); *cf. In re Est. of Christensen*, 290 N.W. 34, 39 (Iowa 1940) (discussing the standard of review for a request to mortgage estate assets). Thus, in this appeal, our role is to "examine the record de novo to determine whether an abuse of discretion can be found." *In re Est. of Randeris*, 523 N.W.2d 600, 606 (Iowa Ct. App. 1994).

4

## III. Analysis

### A. Proposed Sale

Gloria's will allows her executors to sell, lease, or encumber the property of her estate "without the necessity of court order." When so authorized, executors are permitted to liquidate assets without judicial oversight. *See* Iowa Code § 633.383(1). But the rule is different when the executor is both seller and buyer. Self-dealing by fiduciaries is "generally prohibited," *In re Est. of Snapp*, 502 N.W.2d 29, 33 (Iowa Ct. App. 1993), and executors who stand to personally profit from a transaction with the estate may only proceed upon "order of court after notice to all interested persons," Iowa Code § 633.155. The court may refuse to approve a sale that is disadvantageous to the estate. *Id.* § 633.399; *In re Est. of Day*, 521 N.W.2d 475, 478 (Iowa Ct. App. 1994). The burden is on the executor to show otherwise. *See In re Guardianship & Conservatorship of Jordan*, 616 N.W.2d 553, 559 (Iowa 2000).

Cabrina and Jim acknowledge their proposal to buy the farm is self-dealing under section 633.155. But they contend the transaction is in the best interest of the estate because it promised a return "exceeding all the broker price values." At the hearing, they pointed to the January 2023 broker's opinion as well as to a pair of later valuations that suggest the farm could sell for $1.23 million if marketed separately as cropland and an acreage. Emphasizing their siblings' failure to obtain a competing appraisal, Cabrina and Jim argue the probate court abused its discretion by denying their $1.26 million sale.

Jordan and Kimberlee challenge the executors' math. They contend that the executors' valuations misjudged the market value of Linn County farmland and that, acre-for-acre, the prices Cabrina and Jim proposed to pay

for their parcels are steeply discounted—even when compared to the January 2023 opinion. Witnesses for the executors testified that these lower prices reflect the less-desirable features of Cabrina and Jim's chosen tracts. But the probate court was "not convinced" that their plan to split up the farm benefited the estate. It concluded that "the best way to determine the actual value of the farmland is to sell the land at public auction."

For our review, we need not reconcile the parties' competing calculations, nor do we question the basic assumptions of the real-estate professionals who testified at the hearing. The present question is whether the proposed sale was in "the best interests of the estate," not whether $1.26 million was fair market value. Iowa Code § 633.399. As fiduciaries, the executors have a duty to sell the estate's assets for the best price they can obtain. *See In re Est. of Kemp*, No. 13-0747, 2014 WL 1714471, at *3 (Iowa Ct. App. Apr. 30, 2014) ("One of the primary duties in administering an estate is to maximize the value of the estate for the benefit of the beneficiaries."); *In re Est. of Froemke*, 994 N.W.2d 419, 432 (N.D. 2023) (explaining an executor "must obtain the best possible price" when selling estate property (citation omitted)). The record shows they did not attempt to do so.

After declining Jordan and Kimberlee's offer to purchase the farm at the original valuation price, the executors refused to engage their siblings in further negotiation. According to Cabrina, there were "several" more favorable bids, and she expected her siblings to make "a counter-offer" to their first proposal. But Jordan testified that he received no information about the competing offers. And he only learned about the executors' decision to subdivide the land when they filed their contracts for court approval. Cabrina admitted she did not tell her siblings that she and Jim

6

intended to purchase the farm themselves. The way she saw it, "We were making the decisions, and [they] had no input."

At the hearing, Jordan confirmed that he and Kimberlee remained interested in purchasing their mother's land and were prepared to bid against their older siblings.[3] Cabrina testified that the executors were also "willing to adjust" their price. In other words, even among the Pflughaupt siblings, the farm's highest bidder has yet to be identified. All four of Gloria's children appear ready to pay more than the farm's estimated value. Yet the executors did not seek out the top dollar; they settled for a deal with themselves. Whether or not their $1.26 million offer is fair, they have failed to show it is the best deal available to the estate. *See In re Herthel C. Uhl Revocable Tr.*, No. 23-0687, 2024 WL 1757168, at *6 (Iowa Ct. App. Apr. 24, 2024) (finding a trustee did not prove self-dealing was in the best interest of beneficiaries where he proposed to purchase trust farmland at its appraised value but otherwise "failed to market the property").

We find no abuse of discretion in the probate court's decision to reject the executors' proposal and order the land auctioned at a public sale. *See Day*, 521 N.W.2d at 478; Iowa Code § 633.399 (providing that the probate court may enter such orders as it "may deem advisable" upon rejecting a report of sale).

## B.    Removal

We next turn to the question of Cabrina and Jim's removal. Among other reasons, the probate court may order the removal of fiduciaries when it

---

[3] Armed with a preapproval letter, Jordan rejected suggestions on cross-examination that his assessment of the farm's value was unrealistic. He testified, "I buy a parcel for its location and whether it appeals to me."

finds they have "mismanaged the estate" or "failed to perform any duty imposed by law." Iowa Code § 633.65. "A conflict of interest or unwarranted hostility between the executor and trustee and the beneficiaries may also support the removal of an executor." *In re Est. of Atwood*, 577 N.W.2d 60, 64 (Iowa Ct. App. 1998). The burden is on the party seeking removal to show the executor engaged in wrongful conduct. *Id.* at 63.

The probate court found Cabrina and Jim's "self-dealing and failure to provide information to other beneficiaries" warranted their removal. The executors challenge that rationale, noting they served "the statutorily required notice" and conditioned their sale on court approval. It is true that removal is not required where an executor takes appropriate steps to ensure a conflicted transaction is in the best interests of the estate. *See In re Est. of Zenisek*, No. 08-0938, 2009 WL 1211981, at *2 (Iowa Ct. App. May 6, 2009) (affirming denial of a petition to remove executors who purchased farmland from the estate only after obtaining an appraisal and appointing a special administrator to evaluate their offer). But when self-dealing amounts to a breach of fiduciary duty, removal is an appropriate remedy. *See Rutter*, 633 N.W.2d at 750–51 (finding trial court abused its discretion by failing to remove an executor who made estate disbursements to his personal advantage); *Kemp*, 2014 WL 1714471, at *4 (finding removal was required where an executor used a strawman transfer to acquire discounted estate property without full disclosure to the court and beneficiaries).

Aside from obtaining a broker's price opinion for the cropland as a whole—rather than an appraisal or other valuation of the subdivided parcels they intended to purchase—Cabrina and Jim took no steps to determine whether their proposed sale was in the best interests of the estate. Although that transaction never materialized, we find their refusal to explore a more

lucrative deal when approached by ready buyers was a violation of their fiduciary duties. *See Atwood*, 577 N.W.2d at 63 ("A fiduciary must manage an estate with the level of care an ordinary prudent man or woman would exercise under like circumstances in his or her own affairs."); *Hanley v. Alarie*, 746 A.2d 125, 127–28 (R.I. 2000) (per curiam) (finding an executor breached her fiduciary duty where she unreasonably relied on a biased estimate rather than taking any steps to market the estate's property).

Beyond their self-dealing, the probate court also found Cabrina and Jim were subject to removal for their waste, mismanagement, and hostility toward their siblings. Our independent review of the record confirms the executors gave away marketable hay bales,[4] allowed themselves and others free use of the farm property, and demolished parts of the homestead without consulting Jordan and Kimberlee. All of this was contrary to their obligation "to maximize the value of the estate for the benefit of the beneficiaries." *Kemp*, 2014 WL 1714471, at *3; *see also In re of Est. of Jones*, 492 N.W.2d 723, 726 (Iowa Ct. App. 1992) (finding removal appropriate where, among other things, the executor declined to collect payments her son owed to the estate). We likewise find persuasive evidence that the conflict between the Pflughaupt children has undermined the "trust and confidence necessary in the discharge of the duties of an executor." *Randeris*, 523 N.W.2d at 606. Cabrina and Jim's disdain for their siblings is so pronounced that they declined to invite them to their mother's memorial service. And during the

---

[4] The parties dispute whether the hay bales harvested from the farm's CRP acres during a drought season were allowed to be sold under the federal contract. Like the probate court, we credit Jordan's testimony on this issue because it is corroborated by a USDA guidance document admitted at the hearing. To be clear, we conclude the hay was marketable as a matter of fact, not law. No party points us to the relevant federal rules regarding hay sales under CRP.

hearing, the court had to interrupt the proceedings to admonish the executors against distracting outbursts, noting their behavior raised "concern[s] . . . about the ability to get along."

For all these reasons, we agree that Cabrina and Jim have mismanaged the estate and failed to perform their duties as executors. *See* Iowa Code § 633.65. The probate court was within its "broad discretion" to remove them from their fiduciary roles. *Randeris*, 523 N.W.2d at 605–06. We affirm the court's order on all issues and remand for further proceedings.

**AFFIRMED AND REMANDED.**